156 Cal.App.3d 20 (1984)
202 Cal. Rptr. 646
In re the Marriage of PHYLLIS E. and FRANK R. MARTINEZ, JR.
PHYLLIS E. MARTINEZ, Appellant,
v.
FRANK R. MARTINEZ, JR., Appellant.
Docket No. A016685.
Court of Appeals of California, First District, Division One.
May 18, 1984.
*24 COUNSEL
Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Merrill E. Steinberg, De Goff & Sherman, Richard Sherman, O'Hara & Moelk and James F. Moelk for Appellant Wife.
William H. McPherson and McPherson, Barnett & Mattice for Appellant Husband.
OPINION
NEWSOM, J.
Cross-appeals have been filed from a judgment in this dissolution action which determined the nature of the parties' interests in the property of the marriage and awarded spousal support to appellant. Appellant (petitioner below and also cross-respondent in this court) challenges the distribution of marital property, seeks reversal of the denial of attorney fees, and claims the trial court erred by limiting her spousal support award and her right to present additional testimony. Respondent argues in his cross-appeal that certain farm equipment should have been declared his separate *25 property, and seeks an offset or credit for $5,500 expended by appellant after the parties' separation.
Appellant and respondent were married on March 3, 1969, and separated on February 1, 1981. Two children were born the issue of the marriage: both are still minors. Neither party owned real property at the time of the marriage.
After their marriage, the couple resided in a trailer located on a 21-acre ranch (hereinafter the ranch) owned by respondent's parents, Frank and Alice Martinez, Sr. (hereinafter individually referred to as Frank and Alice). Wishing to build a home on the property, they made arrangements to obtain a construction loan from California Federal Savings and Loan which required them to have title to the property placed in their names. The transfer was completed, by a grant deed from respondent's parents to appellant and respondent "as joint tenants," title passing on July 2, 1971. Conflicting testimony was offered on the effect of the joint tenancy deed.
Appellant testified that she and respondent purchased the ranch from respondent's parents for $10,000. Documentary evidence reveals that the parties executed a promissory note in the amount of $7,986.19 in favor of respondent's parents, secured by a deed of trust on the property, and assumed an outstanding loan against the property in the amount of $2,013 which they repaid in full during the marriage.
According to respondent, his parents intended to transfer the ranch to him alone, to the exclusion of appellant. Respondent characterized the property transfer as a gift to him, but also testified that he owed his parents $50,000 for the property. He explained that the purpose of the promissory note was merely to avoid gift and inheritance taxes, and the joint tenancy deed was, according to him, only executed to satisfy the bank, thereby to obtain the construction loan. Both Frank and Alice testified that according to an oral understanding with respondent, he was to pay them $50,000 for the property. Alice claimed that the obligation was to pay $50,000 for the ranch, but both agreed with respondent that in any event they did not intend to transfer any interest in the ranch to appellant. Alice claimed that the obligation to pay for the ranch was her son's alone, while Frank testified that both appellant and respondent were responsible for the $50,000 debt.
In March of 1972, the couple obtained a construction loan in the amount of $44,000, which was used to build a home on the ranch. As required by law, before the family home was built the property was divided into two parcels: a 9.93-acre lot on which the new home was built, and an 11.33 acre lot where an old rental residence was left standing. A parcel map *26 reflecting the lot split was recorded, but title to the ranch was left in the names of appellant and respondent as joint tenants.
The couple derived income from the operating ranch during the marriage. Respondent earned additional income as an operating engineer for construction contractors. Other sources of income for the couple were an Amway distributor's business operated primarily by appellant out of the family home, and appellant's beauty shop, which was also located in the family residence.
The couple borrowed an additional $31,000 to improve the ranch during the marriage. A swimming pool was added to the smaller parcel and a metal building was constructed on the larger lot. The property was not otherwise significantly improved during the marriage.
On appeal, appellant complains of the trial court's characterization and distribution of property acquired by the couple during the marriage. Primarily, she contends that the trial court erred in awarding respondent the 11.33-acre parcel of real property, which, when acquired during the marriage, was part of an undivided lot transferred to the parties as joint tenants by respondent's parents. The trial court found that the 9.93 acre parcel upon which the couple built their residence was community property to be divided equally between the parties. The larger 11.33 acre lot, however, was characterized as respondent's separate property, based upon the trial court's finding of "an understanding between the parties" at the time such property was conveyed to them as joint tenants that appellant would not acquire an interest in it. Appellant submits that both parcels must be characterized as community property.
A threshold issue is presented by appellant's contention that respondent is precluded from claiming a separate property interest in the ranch by admissions in his pleadings that the ranch was a community asset. Specifically, appellant points to respondent's response to the dissolution petition, wherein he listed the ranch among the community property assets, and to an answer to a request for admissions in which respondent claimed no separate property interest in the ranch.[1]
Respondent disagreed with his counsel's decision to disclaim any separate property interest in the ranch, and finally dismissed his first attorney over this conflict. Subsequently, he asserted a separate property claim to the ranch. At the pretrial hearing, characterization of the ranch as separate or *27 community property was made an issue by respondent. And at trial, the parties treated the issue as if it were in dispute; appellant made no objection to evidence offered by respondent in support of his assertion that the ranch was his separate property.
(1) We find that appellant's failure to object to the admission of evidence relevant to respondent's claim of a separate property interest in the ranch constitutes a waiver of her right to seek reversal on that ground on appeal. (California State Auto Assn. Inter-Ins. Bureau v. Antonelli (1979) 94 Cal. App.3d 113, 122 [156 Cal. Rptr. 369]; Dugar v. Happy Tiger Records, Inc. (1974) 41 Cal. App.3d 811, 817 [116 Cal. Rptr. 412].) Moreover, any variance between respondent's pleading and the proof offered at trial is of no consequence given the fact that the issue was fully and fairly litigated at trial without objection from appellant. (Franz v. Board of Medical Quality Assurance (1982) 31 Cal.3d 124, 144 [181 Cal. Rptr. 732, 642 P.2d 792]; Davis v. Cordova Recreation & Park Dist. (1972) 24 Cal. App.3d 789, 794 [101 Cal. Rptr. 358].) (2) Thus, finding in the record no direct allegation by respondent that the ranch is community property, and considering the lack of objection at trial to the admission of evidence on the issue of its character, we conclude that respondent was not foreclosed from offering proof to support his claim to a separate property interest in the asset. (In re Marriage of Wall (1973) 30 Cal. App.3d 1042, 1047-1048, fn. 3 [106 Cal. Rptr. 690].)
Turning next to the merits of appellant's argument, we note that the joint tenancy form of the deed creates a rebuttable presumption that both parcels are community property. (Civ. Code, § 5110.) The dispute in the case at bench focuses upon the nature of the evidence necessary to rebut the community property presumption, which has been affected by a recent change in the law.
In July of 1983, Assembly Bill No. 26 was enacted, which added sections 4800.1 and 4800.2 to the Civil Code, and amended section 5110. (See Stats. 1983, ch. 342, §§ 1-2.) Section 4800.1 reads: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:
"(a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.
"(b) Proof that the parties have made a written agreement that the property is separate property." (Italics added.)
*28 Section 4800.1 establishes a presumption that "property acquired by the parties during marriage in joint tenancy form" is community property. (In re Marriage of Neal (1984) 153 Cal. App.3d 117, 123 [200 Cal. Rptr. 341].) According to the remainder of section 4800.1, the community property presumption is rebuttable by evidence that "property is separate property and not community property" contained in a written agreement between the parties.
The law in effect on the date of trial is found in In re Marriage of Lucas (1980) 27 Cal.3d 808, 813 [166 Cal. Rptr. 853, 614 P.2d 285] where our high court declared that "[t]he presumption arising from the form of title" can be rebutted by evidence of an agreement or understanding that the property is the separate property of one of the spouses despite the contrary indication in the deed. (See also In re Marriage of Miller (1982) 133 Cal. App.3d 988, 992 [184 Cal. Rptr. 408]; In re Marriage of Hayden (1981) 124 Cal. App.3d 72, 76 [177 Cal. Rptr. 183].) Lucas allows the agreement of the spouses to be either written or oral, express or implied, as long as it is proved by the preponderance of evidence.
(3) In contrast, section 4800.1 requires a writing to rebut the community property presumption. We accordingly reject respondent's contention that section 4800.1 does not abrogate the rule of Lucas but permits the continued use of implied or oral agreements to contravene the effect of a joint tenancy deed, for the announced purpose of the Legislature in enacting section 4800.1 was to change the rule of Lucas. (In re Marriage of Neal, supra, 153 Cal. App.3d 117, 123; see also Assem. Com. on Judiciary Rep. on Assem. Bill No. 26 (May 9, 1983), p. 3; 83 Senate J. (1983 Reg. Sess.) pp. 4865-4866.) We therefore conclude that only a "clear statement in the deed" or other "written agreement," as prescribed by section 4800.1, will rebut the community property presumption arising from a joint tenancy deed; an oral or implied understanding, as relied upon by respondent, does not suffice.
(4a) The crucial question is thus whether section 4800.1 shall be given retroactive application in this proceeding.
(5) Generally, legislative enactments are presumed to operate prospectively and not retrospectively. (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 587 [128 Cal. Rptr. 427, 546 P.2d 1371]; In re Marriage of Ludwig (1976) 58 Cal. App.3d 744, 747 [130 Cal. Rptr. 234].) But in Bouquet, the court noted that this presumption is rebuttable, explaining: "We have explicitly subordinated the presumption against the retroactive application of statutes to the transcendent canon of statutory construction that the design of the Legislature be given effect." (16 Cal.3d at p. 587.) The presumption *29 of prospectivity is not absolute, however. "`Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.'" (Mannheim v. Superior Court (1970) 3 Cal.3d 678, 687 [91 Cal. Rptr. 585, 478 P.2d 17], quoting from In re Estrada (1965) 63 Cal.2d 740, 746 [48 Cal. Rptr. 172, 408 P.2d 948].)
Thus, ascertainment of the legislative intent is of paramount importance. (In re Marriage of Bouquet, supra, 16 Cal.3d 583, 587.) And consistent with the mandate of Estrada, "`all pertinent factors'" must be consulted when attempting to divine legislative purpose. (Ibid.) Such factors include "`the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.'" (Ibid.)
(4b) We discern a clear indication of legislative intent from section 4 of Assembly Bill No., 26, which declares that the act applies to: "(a) Proceedings commenced on or after January 1, 1984.
"(b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1, 1984." (Stats. 1983, ch. 342, § 4.) Pursuant to subdivision (b) of section 4, cases, like the one before us, which are still pending on appeal as of January 1, 1984, are not yet final and hence are governed by section 4800.1. (Code Civ. Proc., § 1049;[2]In re Marriage of Neal, supra, 153 Cal. App.2d 117, 121; Estate of Molera (1972) 23 Cal. App.3d 993, 998 [100 Cal. Rptr. 696]; Davis v. Fidelity & Deposit Co. (1949) 93 Cal. App.2d 13, 16 [208 P.2d 414].)
Examination of other "pertinent factors" confirms the need for retroactive application of section 4800.1. As the present case illustrates, by permitting the community property presumption to be rebutted by evidence of an oral understanding of the spouses, Lucas has promoted actions characterized by conflicting and inconsistent testimony, with each side offering different explanations for the effect of a joint tenancy deed. (In re Marriage of Lucas, supra, 27 Cal.3d 808.) Often, the intent of the parties who long ago filed a joint tenancy deed may be confused by faded memories or altered to self-serving testimony. We think that section 4800.1 was enacted to provide a *30 reliable test by which to determine the understanding of the parties; it seeks to prevent the abuses and unpredictability which have resulted from application of the Lucas standard. (In re Marriage of Neal, supra, 153 Cal. App.3d 117, 121.) Section 4800.1 also better protects the sanctity of the joint tenancy deed. We are convinced of the importance of retrospectively applying the rule enumerated in section 4800.1 so that such interests are served in all pending judicial proceedings.[3]
We also conclude that retroactive application of section 4800.1 does not deny respondent due process. "All retrospective legislation is not invalid merely because it operates as such. (See 5 Witkin, Summary of Cal. Law (8th ed.) Constitutional Law, § 282, p. 3571.) It will be invalid only if it deprives one of vested rights, which are bound to be respected or protected by the state, or if it impairs the obligations of contract." (Robertson v. Willis (1978) 77 Cal. App.3d 358, 365 [143 Cal. Rptr. 523].) We find in section 4800.1 no interference with vested rights; rather, it merely alters the evidentiary burden of proof where a husband and wife take property by a joint tenancy deed.
(6) We have concluded that the present record does not contain evidence of a written agreement granting respondent a separate property interest in the 11.33-acre parcel, as is required by retroactive application of section 4800.1 to rebut the community property presumption which emanated from the joint tenancy deed. Nevertheless, in fairness to respondent the case will be remanded for a hearing at which he shall have the opportunity to prove a written agreement in accordance with section 4800.1.
Upon remand, respondent must also be permitted to produce such evidence as he may have of his entitlement to reimbursement under section 4800.2, which provides that: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, `contributions to the acquisition of the property' include downpayments, payments for improvements, and *31 payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."
(7) According to section 4800.2, a spouse who has contributed separate property funds to the acquisition of an asset which is placed in joint tenancy (and thereby becomes community property under the § 4800.1 presumption) is entitled to reimbursement to the extent of the separate property contribution. Reimbursement is only permitted, however, if "the party traces the contributions to a separate property source." Tracing is the sole method by which the right to reimbursement can be established. The statute does not authorize reimbursement pursuant to an agreement of the parties; and to read into section 4800.2 the right to reimbursement upon proof of an oral agreement would contravene the very purpose of the legislation.
Accordingly, upon remand, reimbursement will be limited to the amount of separate property "contributions to the acquisition of the property." We conclude that "contributions" as defined in section 4800.2 includes separate property gifts to a party which are then used to acquire the property placed in joint tenancy. (Civ. Code, §§ 5107, 5108.)
Thus, respondent may be entitled to reimbursement to the extent that the real property is established as a gift to him from his parents. The measure of the gift would be limited, however, to the separate property equity in the ranch at the time of its acquisition, and cannot include any appreciation of the property. (See In re Marriage of Neal, supra, 153 Cal. App.3d 117, 124, particularly the discussion in fn. 11.) Section 4800.2 specifies that reimbursement for contributions is "without interest or adjustment for change in monetary values...." In the case at bench, therefore, respondent can be awarded as reimbursement no more than the value of the gift, that is, the fair market value of the property at the time it was transferred to the parties, less any outstanding encumbrances for which the community was obligated.[4]
Appellant also contends that the metal building constructed on the 11.33-acre parcel was erroneously characterized as respondent's separate property. The building was acquired in component parts during the marriage and erected by respondent on a concrete foundation.
*32 Respondent's separate property claim to the building is based upon two considerations: the separate property nature of the land on which it was constructed, and the "ranch account" used to acquire it.
(8) As an asset acquired during the marriage, the metal building is presumed to be community property, with the burden on the spouse asserting its separate character to overcome the presumption. (Civ. Code, § 5110; See v. See (1966) 64 Cal.2d 778, 783 [51 Cal. Rptr. 888, 415 P.2d 776]; In re Marriage of Marsden (1982) 130 Cal. App.3d 426, 441 [181 Cal. Rptr. 910].) (9) There are two methods of rebutting the presumption that property purchased during the marriage is community: direct tracing to a separate property source, or proof that at the time of the purchase all community income was exhausted by family expenses. (Estate of Murphy (1976) 15 Cal.3d 907, 918 [126 Cal. Rptr. 820, 544 P.2d 956]; In re Marriage of Mix (1975) 14 Cal.3d 604, 611-612 [122 Cal. Rptr. 79, 536 P.2d 479]; See v. See, supra, 64 Cal.2d at p. 783.)
Respondent neither traced the source of the acquisition to his separate property nor showed exhaustion of community funds. Even if the land is deemed respondent's separate property, the building was not derived from that source, and the critical factor is the source of the funds used to pay for the building. Respondent testified that he maintained a separate "ranch account" which was not community property, but he never established that the money in the ranch account came from a separate property source. He merely classified the ranch income as his separate property without offering a basis for his conclusion. And respondent admitted that the ranch and "personal" accounts were so commingled or "confused" that he did not know which account was used to pay for the building. (10) Since, therefore, we fail to find any credible evidence in the record to rebut the presumption that the metal building is community property, we conclude that the trial court erred in characterizing it as respondent's separate property. Upon remand, the trial court will find the metal building to be community property, determine its value, and distribute it equally to the parties.
Appellant next challenges the trial court's finding that the motor boat and trailer (hereinafter the boat) are the separate property of respondent. The boat, according to respondent, is worth approximately $500, and was acquired as a gift from appellant's uncle. Respondent testified that the boat was "given to me by her [appellant's] Uncle Horning." Appellant claims that the boat was a gift from her uncle to both parties. The boat was registered in their joint names, giving rise to the community property presumption found in sections 5110 and 4800.1.
The record is devoid of any showing of a writing which rebuts the section 4800.1 community property presumption. There is no evidence to support *33 the award of the boat to respondent, and the award must accordingly be reversed. (In re Marriage of Mungia (1983) 146 Cal. App.3d 853, 860 [195 Cal. Rptr. 199]; In re Marriage of Hayden (1981) 124 Cal. App.3d 72, 76 [177 Cal. Rptr. 183]; In re Marriage of Mahone (1981) 123 Cal. App.3d 17, 23-24 [176 Cal. Rptr. 274].) As with the ranch, on remand we instruct the trial court to declare the boat a community asset unless a written agreement to the contrary is produced by respondent (§ 4800.1), and to award reimbursement in accordance with section 4800.2 if the boat is established as a gift to respondent.
Next, appellant argues that the trial court failed to properly dispose of a community property item: a 1976 Ford pickup truck. The truck was listed as a community property asset in appellant's response to the petition for dissolution filed by respondent, but the trial court found that "the evidence is insufficient to establish the existence of the 1976 Ford Pick-Up Truck." No award of the truck was made.
While both parties referred to the truck in passing during their testimony, neither testified that it was still in existence. And its value was never mentioned during the trial. (11) It is, however, the obligation of the trial court to determine the character of all property listed by the parties as community property. (Cal. Rules of Court, rule 1242[5]; In re Marriage of Knickerbocker (1974) 43 Cal. App.3d 1039, 1048 [118 Cal. Rptr. 232].) Thus, upon retrial the court shall take additional evidence on the subject of the truck and make an order for its disposition in accordance with rule 1242.
Appellant also complains that the trial court erred in failing to award her attorney's fees.
We conclude that reversal of the real property award necessitates retrial of the attorney's fees issue. The trial court's order denying appellant's request for attorney's fees was predicated upon its finding that she would derive sufficient income from her interest in the 9.93-acre parcel of the ranch, in the form of a cash buy-out of her share by respondent, to pay her own attorney's fees. Since the attorney's fees order is tied, at least in part, to the division of community property, the judgment on both issues must fall together.
*34 (12) An appellate court may reverse a judgment in part and order a retrial of a single issue if it is distinct and severable from the remaining issues. (Gyerman v. United States Lines Co. (1972) 7 Cal.3d 488, 505 [102 Cal. Rptr. 795, 498 P.2d 1043]; In re Marriage of Steinberg (1977) 66 Cal. App.3d 815, 820 [136 Cal. Rptr. 299].) But where a limited retrial might be prejudicial to either party, failure to grant a new trial on all related issues is an abuse of discretion. (Baxter v. Phillips (1970) 4 Cal. App.3d 610, 617 [84 Cal. Rptr. 609].) In light of the reversal and remand for a new determination of the parties' community property rights, we perceive that an injustice would result if a new division of community property does not give appellant the capital required to pay her attorney fees. We accordingly reverse that part of the judgment denying appellant attorney's fees and order a retrial of the issue.
Appellant also contends the trial court should not have terminated spousal support after two years from the date she received her share of the community property. Spousal support in the amount of $1,000 per month was ordered, with the amount of the monthly payments reduced to $500 when appellant begins to receive cash payments for her interest in community property, and terminated two years thereafter. Appellant argues that the reduction and termination of spousal support were improperly based upon speculation concerning her future income.
As with the order on attorney fees, we conclude that reversal of the community property award makes retrial of the spousal support issue necessary. In the event the division of community property is different upon retrial, appellant may not receive a cash award as a "buy-out" for her interest in the ranch, or she may receive a greater amount of money. (13) (See fn. 6.) Since the trial court determined the amount of spousal support in light of the community property appellant was to receive in the form of cash, prejudice to one of the parties might result from a limited retrial of the community property issue.[6]
*35 (14) Respondent makes two claims in his cross-appeal, the first of which is that the trial court erred by allowing appellant to retain $5,500 from a community loan.
According to appellant's testimony, following separation she used the loan proceeds to support herself and the children and pay outstanding community obligations. The trial court directed her to return $9,500 of the $15,000 loan, and respondent was ordered to pay the balance of the loan. Respondent was not given a credit for the $5,500 spent by appellant, but we find no error in this omission.
The record supports a finding that appellant used the loan proceeds to pay community obligations and support herself and the children, and that respondent is thus not entitled to reimbursement. (In re Marriage of Epstein, supra, 24 Cal.3d 76, 85.)
(15) Respondent also complains that certain farm equipment, specifically a "D-Z tractor" and a "spray rig" should have been characterized as his separate property. The trial court found that all of the farm equipment was community property, and divided it equally.
These two items were acquired during the marriage, and therefore the general community property presumption of section 5110 applies. (See v. See, supra, 64 Cal.2d 778, 783; In re Marriage of Marsden, supra, 130 Cal. App.3d 426, 441.) Respondent attempted to rebut the presumption by testifying that the tractor and spray rig were gifts to him from his father. But he also testified that a bill of sale was executed for each item, and these bills of sale were admitted into evidence. Since respondent has failed to show that separate funds were used to pay for these acquisitions, the trial court was free to disregard his testimony that the tractor and spray rig were gifts to him alone, particularly in light of the inconsistency represented by the bills of sale. We are not free to reweigh the evidence, and accordingly affirm the trial court's finding  based as it is upon substantial evidence  that the farm equipment is community property.
That part of the judgment awarding the ranch, boat and metal building to respondent as his separate property is reversed, as are the spousal support *36 and attorney fee orders. The remainder of the judgment is affirmed. The case is remanded for retrial of all orders reversed in accordance with the views expressed herein. Respondent will pay all costs on appeal.
Elkington, Acting P.J., and Holmdahl, J., concurred.
A petition for a rehearing was denied June 13, 1984, and the petition of appellant Husband for a hearing by the Supreme Court was denied August 8, 1984.
NOTES
[1] In a request for admissions respondent replied "No" to the question: "Do you claim that there is any property in existence which is your separate property?"
[2] Section 1049 states that "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."
[3] We note that support for the conclusion that section 4800.1 should be retroactively applied is also found in the fact that Lucas  which also made it more difficult to rebut the community property presumption arising from a joint tenancy deed by eliminating the tracing method of showing a separate property interest  was retroactively applied. (See In re Marriage of Johnson (1983) 143 Cal. App.3d 57 [191 Cal. Rptr. 545] 60; In re Marriage of Gonzales (1981) 116 Cal. App.3d 556, 559 [172 Cal. Rptr. 179].)
[4] Given the present record, we see very little chance that respondent will be able to prove either a written agreement under section 4800.1 or a separate property contribution within the meaning of section 4800.2  particularly in light of the promissory note executed by the parties. But since neither issue was squarely presented to the court, we feel that a remand is appropriate.
[5] In pertinent part, rule 1242 provides that "The court in every case shall ascertain the nature and extent of all assets and obligations subject to disposition by the court in the proceeding and shall divide such assets and obligations as provided in the Family Law Act, ..."
[6] For the benefit of the trial court upon retrial, we observe the rule that changes in support to take effect in the future must be based upon reasonable inferences drawn from the evidence, "not mere hopes or speculative expectations." (In re Marriage of Rosan (1972) 24 Cal. App.3d 885, 896 [101 Cal. Rptr. 295].) To support a stepdown of payments, there must be proof that the wife's earning capabilities will improve or her needs decrease, or that the husband's ability to pay will decrease. (In re Marriage of Johnson, supra, 143 Cal. App.3d 57, 62.)

The record shows that appellant has the ability to earn substantial income from two possibly profitable businesses  the Amway distributorship and her beauty salon. Both businesses may become more profitable in the future. Additionally, if appellant receives a cash share of the community property upon remand, she will have the opportunity to invest at least a portion of that capital and thereby earn some additional income. But we are of the view that here the stepdown in support payments, as well as the denial of attorney fees, are based upon speculation. Based upon the present record we would reverse them.
We also note that in determining the appropriate division of marital property upon remand, the trial court should consider the potential adverse consequences from a taxable event such as an ordered "buy-out" of one party's community interest in property or the marriage by the other. (See In re Marriage of Epstein (1979) 24 Cal.3d 76 [154 Cal. Rptr. 413, 592 P.2d 1165]; Carrieres v. Commissioner of Internal Revenue (9th Cir.1977) 552 F.2d 1350, 1351.)
Finally, in light of our conclusion on the preceding issues, we need not discuss appellant's claim that she was denied the opportunity to present rebuttal evidence.