[Civ. No. 65343. Second Dist., Div. Two. Sept. 13, 1984.]

In re the Marriage of KARIN BERTA and JOHN PATRICK HUXLEY.
KARIN BERTA HUXLEY, Respondent, v.
JOHN PATRICK HUXLEY, Appellant.

1254

COUNSEL

Stephanie Nordlinger, Baltaxe, Putkin & Levin and George Baltaxe for Appellant.

James E. Sutherland for Respondent.

OPINION

**BEACH, J.**—Consolidated appeals by the husband in a dissolution-of-marriage proceeding. One appeal is from the interlocutory judgment dividing the property and ordering the husband to contribute $12,500 towards his wife's attorney's fees. We affirm that judgment in part, and reverse it in part. The other appeal involves a subsequent order of the trial court directing the husband to contribute $7,500 towards his wife's attorney's fees and costs on appeal. That order is affirmed.

FACTS:

Karin Hansen and John (Jack) Huxley started living together in Los Angeles in June 1969. Jack transferred to Karin stocks worth several thousand

dollars to hide from his wife, who had sued him for divorce in Kansas in 1968. Jack told Karin his wife did not know he had the stocks and he did not want to share the stocks with her.

After his divorce had become final, Jack married Karin in September 1970. After the marriage, Karin transferred some of the stock back to Jack at his request. The couple separated in January 1978.

During their marriage, Karin and Jack bought the following real properties:

1. A condominium in Palos Verdes Estates, which they used as their residence;

2. A four-unit apartment building in Redondo Beach; and

3. A one-bedroom condominium in Austria. To buy the Austrian property, Jack had to establish residency in Austria, as required under Austrian law. Karin, a German national, did not want to establish residence there because she was afraid it would jeopardize her "green card" immigration status. Karin testified that because of certain complexities in Austrian land law she and Jack encountered, title to the property was still held in the previous owner's name after the purchase. Jack, however, testified title was in his name.

Title to the two American properties was taken in joint tenancy. Joint credit was used for both loans.

The down payments on all three properties came from Jack's separate property. Karin testified she and Jack treated the properties as community property. She did quite a bit of work on the properties, such as plastering and painting, sometimes up to 12 hours a day. Jack testified he had an agreement with Karin that the properties were his.

The trial court found the properties to be community property, and awarded the Austrian condominium and the Palos Verdes condominium to Jack, and the Redondo Beach apartment building to Karin. With respect to the Austrian condominium, the trial court made these findings: "The Court finds that the Respondent made a gift to the petitioner and the community of stock and funds which were used as a downpayment on the Austrian *Condominium. The Court finds that when the funds were physically re*turned from Petitioner to the Respondent, that there was no intent on her part to make a gift and that Petitioner expected these stocks and funds to be used to purchase a condominium which was to be community property of

the parties." As to the American properties, the court found that although Jack had not communicated any intent to make a gift to the community of the down payments, which came from his separate property, he had not proven the existence of an oral agreement between him and Karin that he was to maintain his separate property interests in those two real properties.

CONTENTIONS ON APPEAL:

Jack contends:

1. Under Civil Code section 4800.2, which went into effect on January 1, 1984, he is entitled to reimbursement of separate property funds used for the acquisition, during the marriage, of the Palos Verdes condominium and the Redondo Beach apartment building.

2. The trial court made an unequal division of the community property.

3. A clerical error was made in the valuation of his pension plans. In his reply brief, Jack abandons this issue. We therefore do not consider this issue.

4. There is insufficient evidence to support the trial court's finding that the Austrian condominium was community property.

5. The trial court erred in not admitting into evidence a German document, alleged to be a land sales contract for the Austrian property.

6. The trial court abused its discretion in ordering him to contribute $12,500 towards Karin's attorney's fees for the trial and $7,500 towards Karin's attorney's fees on appeal.

DISCUSSION:

1. *Reimbursement of Jack's Separate Property Contributions to the Palos Verdes Condominium and the Redondo Beach Property*

Out of his separate property, Jack paid $10,305 down on the Palos Verdes condominium and $12,600 down on the Redondo Beach apartment building. Title to both properties was taken in joint tenancy. Jack contends the trial court erred in not ordering reimbursement of his separate property contributions to the two properties.

At the time of the trial in this case, Civil Code section 5110 provided that "all real property situated in this state . . . acquired during the marriage by

a married person while domiciled in this state . . . is community property.'' The section also provided that a single family residence acquired during a marriage in joint tenancy was presumed to be community property. The latter provision was deleted from section 5110, and is now replaced by two new sections, as discussed below.

In July 1983, Assembly Bill No. 26 was enacted, adding sections 4800.1 and 4800.2 to the Civil Code, and amending section 5110. (Stats. 1983, ch. 342, §§ 1-2.) The new law became effective on January 1, 1984. Section 4800.1 provides that all property acquired by the parties during marriage in joint tenancy is presumed to be community property. This presumption affects the burden of proof and may be rebutted by either a written agreement or other documentary evidence that the acquired property is in fact separate property. This abrogates the rule of *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 813 [166 Cal.Rptr. 853, 614 P.2d 285], which was in effect at the time of the trial in this case and which declared that the presumption arising from the form of title can be rebutted by evidence of an agreement or understanding, either written or oral, that the property is the separate property of one of the spouses despite the contrary indication in the deed. As noted earlier, Jack claimed the existence of such an oral agreement but the trial court ruled against him.

Civil Code section 4800.2 provides: ''In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, *the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division.* As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property.'' (Italics added.)

■ The question is whether section 4800.2, which became effective on January 1, 1984, after the trial in this case, applies here. We conclude it does. Section 4 of Assembly Bill No. 26, which added sections 4800.1 and 4800.2 to the Civil Code, says that the new law applies to: ''(a) Proceedings commenced on or after January 1, 1984.

''(b) Proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1,

1984." (Stats. 1983, ch. 342, § 4.) This case was not final on January 1, 1984, and therefore the new law applies to it. (*In re Marriage of Koppelman* (1984) 159 Cal.App.3d *ante* p. 627 [205 Cal.Rptr. 629]; *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 29 [202 Cal.Rptr. 646]; *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572, 577 [201 Cal.Rptr. 498]; *In re Marriage of Neal* (1984) 153 Cal.App.3d 117, 121 [200 Cal.Rptr. 341].)[1]

■ We conclude that under Civil Code section 4800.2 Jack is entitled to reimbursement for his separate property contributions to the Palos Verdes condominium and the Redondo Beach apartment building which he and Karin acquired as joint tenants during their marriage. Any reimbursement, however, is limited to the separate property equity in the properties at the time of acquisition, and cannot include any appreciation of the property. (*In re Marriage of Martinez, supra,* 156 Cal.App.3d 20, 31; *In re Marriage of Neal, supra,* 153 Cal.App.3d 117, 124.)

In the reply brief, counsel for Jack argues that Civil Code section 4800.2 is unconstitutional because it limits reimbursement to the separate property funds originally invested in the community property, without any consideration of inflation or appreciation. Counsel points out that because of time limitations and "other commitments," she has had no time to make a proper argument. At oral argument, Jack's counsel again brought up the alleged unconstitutionality of the new law. Because this issue has not been adequately briefed, it is not properly before us and we therefore do not reach it. Instead, we follow the holdings of *In re Marriage of Martinez, supra,* 156 Cal.App.3d 20, 31 and *In re Marriage of Neal, supra,* 153 Cal.App.3d at page 124, that reimbursement under Civil Code section 4800.2 cannot

---

[1]In *In re Marriage of Milse* (1984) 159 Cal.App.3d *ante,* page 471], this court (Div. Five) refused to apply Civil Code section 4800.1 to the particular facts in *Milse,* where the trial court had found that a house the wife had bought during marriage with an $18,890 down payment from her separate property funds and held in joint tenancy with the husband, with the monthly installments on the outstanding balance paid for out of community earnings, was the wife's separate property based on an oral understanding between the parties. In holding retroactive application of section 4800.1 to be unconstitutional in *Milse,* the court said: "When *applied to the facts of the present case* . . . the code section . . . would effectively overrule even the most clearly expressed oral agreement of husband and wife, made at the time when such agreements were accorded full recognition. Wife had no warning that the understanding with her husband, as found by the trial court, would subsequently be held worthless by virtue of legislation enacted after her trial had been completed. . . . Such attempted abrogation of previously vested property rights is the clearest sort of due process denial. We accordingly hold that the retroactive application of section 4800.1 *under the circumstances of this case* would be unconstitutional; therefore, the section does not apply." (159 Cal.App.3d 475, italics added.) As indicated by the italicized language, the court in *Milse* expressly limited the holding to the factual situation in *Milse.* Unlike the situation in *Milse,* in this case the trial court found there was no oral agreement between the parties that the joint-tenancy properties of the parties were Jack's separate properties. The *Milse* holding is therefore inapplicable to this case.

include appreciation of the property. Both cases relied on legislative intent, and did not consider the constitutionality of the law.

In a decision filed on August 16, 1984, the First Appellate District made the following comment on section 4800.2's mandate against apportioning appreciation between community and separate property: "[I]t defies both logic and common sense not to apportion appreciation in the property between separate and community contributions to the acquisition of the property where property is held in joint tenancy form. . . ." (*In re Marriage of Buol* (1984) 159 Cal.App.3d *ante,* pp. 174, 184 [205 Cal.Rptr. 543].) The court noted, however, that since the inequity arose by statute, any cure should come from the Legislature. (*Ibid.*) In *Buol,* the wife in 1963 bought a house during marriage for $17,500 with separate property funds. At the advice of a realtor, title was taken in joint tenancy. The wife continued to make payments on the house from her separate property. The trial court found overwhelming evidence that the husband and wife had a common understanding, both before and after its purchase, that the house would be the wife's separate property.[2] At the time of the trial the property was valued at $175,000. As the appellate court observed: "This home was purchased entirely with Esther's separate property funds for $17,500. The difference between that amount (as well as any other separate property funds of Esther used for 'the acquisition of the property') and the home's fair market value, alleged to be $175,000 at the time of trial, must be found, pursuant to sections 4800.1 and 4800.2, to be community property. Thus, because the property was acquired in joint tenancy, the community, which did not put a penny into the property, could receive in excess of $140,000, while Esther, whose separate property funds made all payments on the property, will be reimbursed something in the neighborhood of $17,500." (159 Cal.App.3d *ante,* at p. 183.)

## 2. *Equality of Community Property Division*

██ Jack contends there was an unequal division of the community property because the value of the assets awarded Karin was $20,000 more than that awarded him. Jack prepared the findings for the court. He submitted extensive objections and proposed counterfindings, which he argued at length. Not once did he raise this particular issue. Having failed to raise the issue in the trial court, Jack may not present it for the first time on appeal.[3] (*Chamberlain* v. *Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 372 [138 Cal.Rptr. 155].)

---

[2]Compare *Buol* with *In re Marriage of Milse, supra, ante,* at p. 471.

[3]In his reply brief, Jack contends that since he raised the issue in his motion for a new trial, appellate review is proper. The record shows that the trial court refused to consider the motion because it was untimely. In any event, since Jack knew, or through the use of reasonable diligence should have known, of any error in the division of the community

### 3. *Sufficiency of Evidence as to Finding That the Austrian Condominium Was Community Property*

During their marriage, Jack and Karin acquired a condominium in Austria. Money from the stock Jack had transferred to Karin before the marriage was used for the down payment, together with $5,000 which Karin contributed from her separate property. Jack's contribution from his separate property was $29,166.

Jack contends the evidence was insufficient to support the trial court's finding that the Austrian condominium, which he and Karin acquired during their marriage, was community property. Karin testified that because she and Jack enjoyed taking skiing vacations in Austria, which they visited frequently, they decided to buy a condominium there. Together they saw a real estate agent, who told them that because of Karin's German citizenship she could not become part of the title. Karin responded that was no problem since Jack could then hold title. To buy the property, Jack, an American citizen, had to establish residency in Austria, as required under Austrian law. He did so. It was advantageous for Jack to use the Austrian address as his main residence. As Karin explained: "As a flight attendant, flying international, my husband could take a tax advantage by declaring his residence overseas. At the time he could take $20,000 off his income taxes that he would not have to declare if he lived overseas." For Karin, on the other hand, to make Austria her primary residence would jeopardize her "green card" resident-immigrant status in the United States.

Karin testified she and Jack bought the condominium, but because of complexities of Austrian law relating to real property purchases by foreigners, title remained in the name of the previous owner. Both she and Jack consulted an attorney in Austria six months after the purchase of the condominium to inquire how Jack as an American could obtain title to the property. The problem was not resolved. At the time of trial, according to Karin, title was still held by the previous owner. Karin explained she and Jack were told that even though Jack's name appeared as the purchaser on the land sale contract, the document was in effect without any value because it was legally insufficient to record title under Austrian law.

Karin's sister testified that Jack referred to the Austrian condominium as "ours" in the presence of her and her husband. Karin, too, referred to the

---

property during the trial, Jack's inaction during the trial constituted a waiver, and the motion for a new trial was not a proper means to raise the issue under the category of newly discovered evidence as Jack did. (*Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 346 [126 Cal.Rptr. 731]; *Langdon* v. *Langdon* (1941) 47 Cal.App.2d 28, 33 [117 P.2d 371].)

Austrian condominium as "ours." She testified that shortly after the purchase of the condominium Jack referred to it as "ours" in her presence when he discussed its purchase with some American and German friends in Austria, making special mention of the title problems they had encountered. Also, while he was vacationing in Austria, Jack sent Karin a picture showing a rail he had just purchased for the condominium's stairway, with the following inscription: ". . . Fits perfect—hope you like latest addition to your [scratched out] mine [scratched out] our apartment. Austria."

Except for Jack's self-serving statement that he and Karin had an agreement that the separate property funds Jack had used for the down payment on the Austrian condominium were to remain his separate property, there was no evidence establishing the existence of such an agreement.

We conclude that substantial evidence supports the trial court's finding that the Austrian condominium was community property and that Jack had made a gift to the community of the separate property funds used for the down payment on the property.

### 4. *Admissibility of German Document*

Jack contends he was prejudiced by the trial court's failure to admit into evidence an unsigned and untranslated document alleged to be the land sales contract for the Austrian condominium. Jack told the trial court the document was relevant because it showed title to be in his name, and also showed that the payments were interest only, with a balloon payment due at the end of the loan term.

██ The trial court did not err in refusing to admit the document into evidence. As the court noted, the document was in a foreign language, making it impossible for the court to ascertain the meaning of the terms set forth in the document. Also, it was not signed, and lacked certification or authentication. Additionally, the court did not find the document to be relevant to the proceedings. As to the payments on the loan, the court had already heard testimony to that effect, and the document would in that respect have been merely cumulative. With respect to the title, the issue was not who had title but why Karin was not part of the title, a matter fully testified to at the trial.

### 5. *Award of Attorney's Fees to Karin*

██ The trial court ordered Jack to contribute $12,500 towards Karin's attorney's fees for the 15-day trial and $7,500 towards Karin's at-

torney's fees on appeal.[4] Jack recognizes that since he earns more than Karin,[5] "some award to her may be within the court's discretion," but contends "the court made an excessive award with too little consideration of the underlying facts."

■ A trial court's award of attorney's fees and costs in a dissolution proceeding will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion, that is, if considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].)

In her declaration filed in support of her motion for attorney's fees on appeal, Karin stated that she had some money in a savings account held jointly by her and her sister in Germany, but because the passbooks had been entered into evidence at the trial she was unable to withdraw any funds except through her sister in Germany. She stated that since the day of separation, Jack had retained the rental income from the Redondo Beach apartment building, which had been awarded to her at the trial and which had a monthly rental income of over $2,000, with an encumbrance of $660 a month, and that she had no funds presently available to pay for all of her attorney fees. Attached to Karin's declaration was her financial statement, which showed a gross income of $2,114.97, a net income of $1,540.12, and total monthly expenses of $1,690.

Jack's counterdeclaration contained a conclusory statement that he was unable to pay his own attorney fees and therefore could not make any contribution towards Karin's attorney fees.

At the hearing held on February 16, 1982, it was brought out that Jack had failed to comply with the trial court's September 30, 1981, order that he contribute $12,500 towards Karin's attorney fees incurred at the trial. In awarding Karin attorney fees of $7,500 to defend the appeal taken by Jack, the trial court commented: "I have had a showing made here, allegations made that first of all that there is separate property up in Tahoe that's worth about $50,000, that he is getting income from [the Redondo Beach apartment building], that he is employed as a purser and attendant, that he's in default of the $12,500 that was ordered at the time of the trial.

---

[4] It is within the power of the trial court to award a party attorney's fees incurred at the trial and attorney's fees and costs to defend the appeal. (*In re Marriage of Stachon* (1978) 77 Cal.App.3d 506, 508 [143 Cal.Rptr. 599]; Civ. Code, § 4370, subd. (a).)

[5] At the time of the trial, Karin's annual income was $24,000 a year and Jack's $30,648 a year. Both worked as flight attendants for TWA.

"It would appear somebody made a determination there at that time[6] that it was not unreasonable to order him to pay that on account of his wife's attorney's fees.

"I have been shown no change of circumstances. . . ."

We find no abuse of discretion in the trial court's award of attorney fees to Karin, and affirm the order appealed from.

The matter is reversed as to that part of the interlocutory judgment not awarding reimbursement to Jack of separate property funds invested in the Palos Verdes condominium and the Redondo Beach apartment building, held jointly by Jack and Karin. In all other aspects, the judgment is affirmed. The order awarding attorney's fees and costs on appeal is affirmed. The parties to bear their own costs on appeal.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied October 5, 1984, and appellant's petition for a hearing by the Supreme Court was denied December 12, 1984. Bird, C. J., Mosk, J., and Grodin, J., were of the opinion that the petition should be granted.

---

[6]The $12,500 attorney-fee award was made by a different judge at the conclusion of the trial.