[No. B029143. Second Dist., Div. Seven. Nov. 23, 1988.]

In re the Marriage of RACHELLE and PETER M. NORTON.
RACHELLE NORTON, Appellant, v.
PETER M. NORTON, Respondent.

[Opinion certified for partial publication.*]

---

* Pursuant to rules 976 and 976.1 of the California Rules of Court, Facts and Proceedings Below and section I are certified for publication.

COUNSEL

Hillary Harry Sax for Appellant.

Brown, Altschuler & Spiro and Bruce J. Altschuler for Respondent.

OPINION

JOHNSON, J.—

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

FACTS AND PROCEEDINGS BELOW

Appellant, Rachelle Norton, and respondent, Peter Norton, have been involved in lengthy and complicated marriage dissolution proceedings. Ms. Norton has brought Mr. Norton to court several times. The present proceeding involves the custody of the parties' 2 minor children, Mark and Jason, who were 11 and 10 at the time of the trial court proceedings. Mark has had severe asthma since birth. He must take medication and use sophisticated apparatus to control his condition. Ms. Norton had custody of the two boys until Mr. Norton gained physical custody in September 1986. Before Mr. Norton gained custody, he was given liberal visitation rights.

*See footnote, *ante,* page 53.

Since Mr. Norton gained custody, he has assumed complete responsibility for Mark's physical condition. Mr. Norton frequently takes the boys skiing for the weekend. He also takes them to other sporting events. Because of Mr. Norton's demanding job, he hired a woman to care for the children while he works. His mother, along with other relatives, also cares for the boys when he is unavailable. When Mr. Norton is out of town on business, Ms. Norton often cares for the boys.

At one point Mark was performing poorly in spelling. Mr. Norton hired a tutor to improve his spelling skills. On another occasion, while on a ski trip, Mark became violently ill and required emergency medical attention. His asthmatic condition worsened and he required extra medicine after the incident.

Ms. Norton now claims that as a result of Mr. Norton having physical custody of the children, Mark's physical condition has deteriorated and his school performance has declined.

On April 10, 1987, Ms. Norton filed a petition to recover custody of the two boys on grounds of "changed circumstances." At hearings on June 3 and 4, 1987, the trial court found no evidence there was a substantial change in circumstances which would warrant a change in the custody decree. Ms. Norton introduced the court psychiatrist who had examined the boys and both parties as an expert witness. Also, Ms. Norton offered Mark's doctor to testify about Mark's physical condition. On the basis of this and other evidence presented, the trial judge found no substantial change in the boys' living conditions since Mr. Norton received custody.

Both Mr. and Ms. Norton requested attorney fees from the opposing party. The trial judge denied Ms. Norton's request. He stated Ms. Norton and her counsel's efforts and expenditures were unreasonable. He added the order to show cause was not a reasonable claim. Finally, as a sanction against Ms. Norton bringing a frivolous claim, the trial judge ordered her to pay $2,500 toward Mr. Norton's attorney fees. Ms. Norton filed a timely notice of appeal challenging these orders.

## I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY AWARDING ATTORNEY FEES TO PETER NORTON

The court may order either party to pay attorney fees and costs reasonably necessary for maintaining or defending marriage dissolution proceed-

ings. Civil Code section 4370, subdivision (a) provides: "During the pendency of any proceeding . . . the court may order any party, . . . to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees."

Attorney fees also are available to either party for trial and appellate court proceedings occurring after judgment is entered. Civil Code section 4370, subdivision (a) states: "In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorneys' fees as may be reasonably necessary to maintain or defend any subsequent proceeding, and may augment or modify any award so made, including after any appeal has been concluded."

### A. The Trial Court Properly Used Its Broad Discretion to Award Peter Norton Attorney Fees

The awarding of attorney fees in a marriage dissolution proceeding is left to the discretion of the trial court and will not be disturbed absent a showing the trial court abused its discretion. The amount awarded also lies within the sound discretion of the trial court. (*In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1191 [212 Cal.Rptr. 803]; *In re Marriage of Huxley* (1984) 159 Cal.App.3d 1253, 1263 [206 Cal.Rptr. 291]; see 2 Markey, Cal. Family Law: Practice and Procedure (1988) § 25.13, p. 25-34.4.)

In determining the amount of attorney fees to be awarded the trial court must consider several factors. As summarized in *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58]: "It is well established that in determining a reasonable fee in dissolution cases the trial court is permitted to consider various factors: namely, the nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and the attorneys selected by the wife." (See *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219 [215 Cal.Rptr. 789].)

### B. The Trial Court Properly Considered the Conduct of Both Parties When Awarding Attorney Fees

A relatively new section of the Civil Code, section 4370.5, allows the trial court to consider the litigation behavior of the parties when awarding attorney fees. Along with evaluating the justness and reasonableness of the

award under the circumstances (§ 4370.5, subd. (a)) the court may consider "[t]he extent to which the conduct of each party and the attorney furthers or frustrates the policy of the law to promote settlement of litigation, and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Civ. Code, § 4370.5, subd. (b)(2).) ■ Thus, the trial judge may award attorney fees to either party as a sanction against bringing frivolous or bad faith claims that deter settlement.

Because of the complex and sensitive nature of marriage dissolution proceedings, it is in the best interests of both parties to resolve all issues expediently and congenially: "The public policy of California strongly favors settlement as the primary means of resolving legal disputes. This is especially true in marital dissolution litigation where it is so clearly in the financial and emotional interests of the parties, especially where they have children, to reach an expeditious and final resolution of their dispute." (*In re Marriage of Hatch, supra,* 169 Cal.App.3d at p. 1221.)

"The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d at p. 113.)

Unless provided by statute, courts have no inherent power to award attorney fees as sanctions for misconduct. Before the enactment of Civil Code section 4370.5 in 1986 it was held the courts had no jurisdiction to award attorney fees as sanctions in marriage dissolution proceedings. In *In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1091 [209 Cal.Rptr. 383], the court ruled the trial court erred in awarding the wife attorney fees based upon the husband's recalcitrance. The court stated: "While the attorney's fees the wife incurs as a result of the husband's dilatory tactics is an appropriate consideration in determining the *amount* of an award, [citation omitted] it is *not sufficient to justify their award in the first instance.* Such an award must be based solely on the respective abilities of the parties to pay." (Italics added.) However, *Stephenson* was decided before the enactment of Civil Code section 4370.5. (See Stats. 1985, ch. 362, § 1, p. 1517; 2 Markey, Cal. Family Law: Practice and Procedure, *supra,* § 25.12[4], p. 25-34.3.)

■ In the instant case, the court had jurisdiction to base its award of attorney fees on Ms. Norton's behavior in prosecuting this action. According to *In re Marriage of Melone* (1987) 193 Cal.App.3d 757 [238 Cal.Rptr.

510], a spouse's conduct falling short of bad faith may be considered by a court in awarding attorney fees. The court relies on Civil Code section 4370.5: "[I]n enacting section 4370.5 the Legislature for the first time acknowledged that reprehensible conduct short of bad faith was a pertinent factor in a court's determination of a proper attorney's fee award." (193 Cal.App.3d at p. 764, fn. omitted.)

The trial court in the instant case found Ms. Norton and her counsel did not behave reasonably and that the order to show cause should not have been brought. In addition, the trial court found Ms. Norton brought several claims against her former husband in order to harass him. Among these unwarranted claims is one brought in this action.[1] Because the trial court considered all relevant factors, including the parties' conduct, when awarding the attorney fees to Mr. Norton and the trial judge properly applied the law, we find no abuse of discretion.

### C. The Trial Court Should Scale the Imposition of Costs to the Means of the Party Against Whom It Is Awarding Fees and Costs

Even though the award of attorney fees in this action is in the nature of a sanction, the court should not impose an unreasonable financial burden upon the sanctioned party. The purpose of Civil Code section 4370.5 is to encourage reasonable litigation and settlement behavior in marriage dissolution proceedings. The purpose is not to cause undue hardship nor to discourage parties from pursuing meritorious actions. Therefore, the other party may not be entitled to an award of all fees and costs he or she expended in the proceedings.

Less affluent parties, typically wives, may be unduly discouraged from vigorously prosecuting legitimate claims and defenses if they face the prospect of having to pay substantial cost and fee awards to the other side. This problem will be compounded if there is a gross disparity of resources. The other side will not feel the same inhibitions since this wealthier party will not find it nearly so hard to pay any award the court may impose for its litigation behavior. This creates an imbalance in the incentives to behave appropriately during settlement negotiations and litigation. Economic analysis suggests the less affluent party will behave too timidly during litigation

---

[1] In appellant's brief, Ms. Norton for the first time sought sanctions against Mr. Norton's attorney for alleged unprofessional conduct. The claim is totally unsupported by the record. Moreover, because the issue of misconduct by Mr. Norton's attorney was not raised in the trial court, it is now waived.

and accept unfavorable settlement terms when facing a party who is less concerned about the possible economic disincentives of taking a hard line. (See *Covenant Mutual Ins. Co.* v. *Young* (1986) 179 Cal.App.3d 318, 325-327 [225 Cal.Rptr. 861], and authorities cited therein.)

Nothing in the language of section 4370.5 suggests it is designed to encourage unfair settlements or inappropriately timid litigation behavior. Indeed it is entirely consistent with this code section for trial courts to take account of the comparative wealth of the competing litigants and the effect of wealth disparities on litigation behavior when they fashion any fee and cost awards they may impose pursuant to this section. What is a reasonable award for one party to a dissolution proceeding may be unreasonable if imposed on the other. For, unless trial courts "scale" any such awards to the comparative wealth of the parties they may discourage the economically weaker party from filing actions she or he should and from pursuing those actions with the vigor they deserve.

The trial court is not restricted in its assessment of comparative ability to pay to a consideration of salary alone. It may take into account all the evidence concerning the parties' income, assets and abilities. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [209 Cal.Rptr. 354, 691 P.2d 1020]; *Meagher* v. *Meagher* (1961) 190 Cal.App.2d 62, 64 [11 Cal.Rptr. 650].) Subdivision (c) of Civil Code section 4370.5 states that "[t]he Court may order payment of the award from any type of property, whether community or separate, principal or income." This section broadens the courts' ability to authorize payment out of any resources that appear proper.

If the parties had not possessed roughly equal means, this court would have remanded it to the trial court to determine whether Mr. Norton was so much wealthier than Ms. Norton that imposing an award of this size on Ms. Norton would disturb the balance of economic incentives and thus unduly discourage her from seeking relief in the courts. However, in the instant case, the trial court found both parties were of roughly equal *net* means. Mr. Norton, who has a higher income than Ms. Norton, has custody of the two boys. He incurs all costs for the boys' care. Thus, the trial court reasonably found Mr. Norton and Ms. Norton appear to be in the same financial position. Moreover, the court specifically found Ms. Norton possessed adequate means to bear the costs imposed on her through this award. Accordingly, we affirm the award the trial court made in this case.

## II. The Trial Court Did Not Abuse Its Discretion by Upholding the Original Custody Decree*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment is affirmed.

Lillie, P. J., and Kolts, J.,† concurred.

---

*See footnote, *ante,* page 53.
†Assigned by the Chairperson of the Judicial Council.