[Civ. No. 32285. First Dist., Div. Four. Nov. 13, 1973.]

MID-CENTURY INSURANCE COMPANY,
Plaintiff and Respondent, v.
SHELLEY L. HAUCK et al., Defendants and Appellants.

294

## COUNSEL

Michael Spencer for Defendants and Appellants.

Grunsky, Pybrum, Skemp & Ebey and Frederick H. Ebey for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—This appeal is from a judgment in favor of respondent insurance carrier and involves the interpretation and construction of a policy of insurance. The facts are not in dispute. The controversy arises out of a water skiing accident when respondent's insured, Larry Hauck, was operating his motor boat and towing his wife, Rebecca Hauck. Mrs. Hauck collided with an irrigation pipe protruding above the water surface and died from the resulting injuries.

Respondent insured Mr. Hauck under its Trident Boat and Yacht Policy. Under coverage C of the policy, respondent agrees "to pay all sums which the insured shall become legally obligated to pay for bodily injury, including death at any time resulting therefrom, sustained by any person . . . ." Under the exclusions section, exclusion 7 states: "[This policy does not cover: . . .] 7. under coverages B, C and D3, bodily injury . . . sustained by (a) any member of the same household as the insured except a residence employee or (b) the named insured." It is undisputed that decedent was a member of the same household as the insured, and, as Larry Hauck's wife, Rebecca Hauck was by definition a "named insured" under the terms of the policy. The issue before us is whether the exclusion, since it speaks only of bodily injury, also includes death. The trial court concluded that exclusion 7 was not ambiguous and the subject policy excluded coverage for the death of Rebecca Hauck, and it entered a declaratory judgment stating that respondent Mid-Century Insurance Company had no obligations or duties of any kind or description to defendants under the terms of its policy on account of the accident.

■ "[W]e begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." (*State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 201 [110 Cal.Rptr. 1, 514 P.2d 953].) ■ The policy before us contains no definition of "bodily injury," although the SPECIAL CONDITIONS section does set forth other definitions applicable to the instant policy. We note that exclusion 6 provides "under coverage B, damages for personal injuries or loss of life." Exclusion 7, here in question, provides, "under coverages B, C and D3, bodily injury or property damage." Exclusion 11 provides "under coverages C and D, bodily injury, sickness, disease or death." It is apparent that within the exclusionary clauses and their overlapping coverage, the terms "bodily injury," "personal injuries," "loss of life," and "death" are not used interchangeably or with any degree of consistency. ■ "[T]he burden rests upon the insurer to

phrase exceptions and exclusions in clear and unmistakable language." (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861].)

While no California decision appears to have ruled directly on the question of whether "bodily injury" includes "death," there is precedent for our determination that "bodily injuries" refer only to nonfatal injuries and that when a policy excludes "bodily injuries," a death resulting therefrom is not so excluded unless specifically stated. (See, e.g., *Housh* v. *Pacific States Life Ins. Co.* (1934) 2 Cal.App.2d 14, 19 [37 P.2d 741] (disapproved on another issue in *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 474 (267 P.2d 777)) and cases cited therein at pp. 19-20; *Ziolkowski* v. *Continental Casualty Co.* (1937) 365 Ill. 594 [7 N.E.2d 451, 455-456], affirming (1936) 284 Ill.App. 505 [1 N.E.2d 410]; *Brush* v. *Washington Nat. Ins. Co.* (1941) 230 Iowa 872 [299 N.W. 403].)

Respondent relies on *Farmers Ins. Exch.* v. *Brown* (1967) 252 Cal. App.2d 120 [60 Cal.Rptr. 1]. We find that case distinguishable. In *Brown,* "bodily injury" was defined in the policy (252 Cal.App.2d at p. 121). We consider that a matter of substance, not of form, as contended by respondent. *Brown,* however, was decided on the basis of the financial responsibility law applicable to operators of motor vehicles (Veh. Code, § § 16000-16503), and no similar financial responsibility has, as yet, been imposed by the Legislature on boat operators. (See, e.g., Harb. & Nav. Code, § § 655, 658, and 661.)

■ "A layman attempting to interpret an insurance policy . . . is not likely to have the legal sophistication to deduce what an insurance company is attempting to accomplish by an ambiguous exclusionary clause; it is on just such grounds that our cases have uniformly required that exclusions be 'conspicuous, plain and clear.' (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) If an insurer intends to exclude coverage . . . it must draft its policy to avoid any misinterpretation by the average layman." (*State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d at p. 207.)

If the carrier sought to exclude an action for wrongful death, it should have included in the SPECIAL CONDITIONS section a definition of "bodily injury" which would achieve that goal, and it should draft its exclusions so that a layman reading the policy understands the distinctions made therein.

"[P]ast authorities have made it abundantly clear that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. ■ Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.] These differing canons of construction [are] both derived from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman . . . ." (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1970) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].)

Judgment reversed with directions to enter judgment for appellants.