94 Cal.App.3d 113 (1979)
156 Cal. Rptr. 369
CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Plaintiff and Respondent,
v.
WILBUR J. ANTONELLI et al., Defendants and Appellants.
Docket No. 41255.
Court of Appeals of California, First District, Division Two.
June 15, 1979.
*115 COUNSEL
Marc Gradstein for Defendants and Appellants.
Ropers, Majeski, Kohn, Bentley & Wagner, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Michael J. Brady, Staiger, Yank, Molinelli & Preston and Paul W. Drewitz for Plaintiff and Respondent.
*116 OPINION
TAYLOR, P.J. 

THE CASE
This is an appeal from a declaratory judgment in favor of plaintiff, California State Automobile Association Inter-Insurance Bureau (hereafter CSAA), determining that it owed no obligation to either defend or indemnify the driver of the insured vehicle with respect to the claimed wrongful death of the named insured.

THE FACTS
The facts as stipulated to by the parties reveal that Margaret J. Antonelli was issued an automobile insurance policy by CSAA in November 1971. The policy was in full force and effect on January 1, 1975, when Margaret J. Antonelli was killed in a single car collision while riding as a passenger in her own car. At the time of the collision, Thomas N. Tamplin was driving the deceased's car. In May 1975, Wilbur J. Antonelli and Augustine Antonelli, parents of the deceased, brought an action against Tamplin, seeking damages for the wrongful death of their daughter. Since Tamplin would apparently qualify as an insured under the policy, CSAA brought this action to determine whether it was obliged to defend and/or indemnify Tamplin.
The trial court held that the policy properly excluded from insurance coverage any claims arising by reason of the death of an insured. We agree and affirm.
The insurance policy in question provides:

"PART I  LIABILITY
"BODILY INJURY LIABILITY; PROPERTY DAMAGE LIABILITY [hereafter coverage section].
"[Insurer agrees] To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, other than punitive damages, because of: [¶] (a) bodily injury, including death *117 resulting therefrom, hereinafter called `bodily injury,' sustained by any person; ..." (Italics added.)
"EXCLUSIONS This policy does not apply under Part 1: ... [¶] (k) to liability to bodily injury to any insured; ..."

DISCUSSION
(1) Since appellants are attacking the superior court's interpretation of the insurance policy and its ruling that CSAA was not liable under the policy, it is the duty of this court to make its own independent determination of the meaning of the language used in the contract under consideration (Bareno v. Employers Life Ins. Co. (1972) 7 Cal.3d 875 [103 Cal. Rptr. 865, 500 P.2d 889]).
Appellants' argument, generally stated, is that since the language of the policy fails to unambiguously exclude "death of an insured" from the policy's coverage, "bodily injury" as used in the policy should be interpreted to mean bodily injury in its narrow sense, i.e., injury not including death. If the exclusion is ambiguous,[1] California case law would support this interpretation. (2) While no California decision appears to have ruled directly on the question of whether "bodily injury" includes "death," it has been held that when a policy excludes liability for "bodily injury" to the insured, such exclusion will not exonerate the insurer from liability where the insured dies (Mid-Century Ins. Co. v. Hauck (1973) 35 Cal. App.3d 293 [110 Cal. Rptr. 707]; Housh v. Pacific States Life Ins. Co. (1934) 2 Cal. App.2d 14 [37 P.2d 714] (disapproved on another issue in Zuckerman v. Underwriters at Lloyd's (1954) 42 Cal.2d 460, 474 [267 P.2d 777])). As such, an insurer must specifically state that "death" as well as "bodily injury" are excluded from the policy's coverage to avoid liability for an insured's death. (3a) Thus, the issue in the present case becomes: (1) Does the definition of "bodily injury" *118 stated in the coverage section unambiguously include "death of the insured"? and, if so, (2) Does this definition unambiguously extend to the exclusion clause which excludes liability for "bodily injury"?
Appellants first argue that the definition of "bodily injury" is, in itself, ambiguous. They claim that since "bodily injury" is given a "special, expanded meaning" in the coverage section, such special definition conflicts with what is "normally understood" by "bodily injury," and hence an ambiguity is created.
(4) It is well settled that if a clause or term in an insurance policy is ambiguous, such ambiguity is to be resolved against the insurer (State Farm Mutual Auto. Ins. Co. v. Elkins (1975) 52 Cal. App.3d 534 [125 Cal. Rptr. 139]). Moreover, the existence of an ambiguity will be determined from a layman's perspective (Crane v. State Farm Fire & Cas. Co. (1971) 5 Cal.3d 112 [95 Cal. Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]). However, such ambiguity cannot be based on a strained interpretation of the policy's terms. Rather, the court should give a reasonable interpretation to such terms (West v. State Farm Mut. Auto. Ins. Co. (1973) 30 Cal. App.3d 562 [106 Cal. Rptr. 486]).
(3b) In the present case, the definition of "bodily injury" contained in the coverage section is not ambiguous. Although "bodily injury" may have a commonly understood meaning that does not include "death," it does not necessarily follow that a lay person reading the insurance policy in question would confuse this narrower interpretation of "bodily injury" with the definition of "bodily injury" provided in the policy. The coverage section unequivocally defines "bodily injury" so that it includes "death." Although "bodily injury" so defined may have a broader meaning than other definitions of "bodily injury," the definition of the term in the coverage section is unambiguous because it adequately excludes any other interpretation of "bodily injury" by defining the term, and using it consistently throughout the policy.
Mid-Century Ins. Co. v. Hauck, supra, 35 Cal. App.3d 293, a case cited by appellants, is instructive on this point. The controversy in Mid-Century arose out of a water skiing accident when the insured was operating his motor boat and towing his wife. The wife collided with an irrigation pipe protruding above the water surface and died from resulting injuries. The insurer sought a declaratory judgment to determine whether it was obliged to pay for wrongful death claims arising out of the death of the *119 wife. The coverage clause of the policy in that case stated that the insurer would "`pay all sums which the insured shall become legally obligated to pay for bodily injury, including death at any time ... sustained by any person'" (p. 295). The policy included an exclusion that stated "`[This policy does not cover ...] ... bodily injury ... sustained by (a) any member of the same household as the insured....'" (P. 295.) It was undisputed that the insured's wife was of the same household as the insured. The issue faced by the court was whether the exclusion that spoke only of "bodily injury" also included death. The court held that death was not excluded from the policy's coverage. The court found that the exclusion was ambiguous because the policy failed to 1) define the term "bodily injury" as including "death," and 2) use that term consistently throughout the policy. The court pointed out that aside from failing to define "bodily injury," other exclusions in the policy used the term in a manner inconsistent with the meaning given "bodily injury" in the coverage section (i.e., "`bodily injury, including death'"). While one exclusion read "`bodily injury or property damage,'" other exclusions used the terms "`personal injuries or loss of life'" and "`bodily injury, sickness, disease or death.'" Since bodily injury was reasonably susceptible of two constructions (i.e., "bodily injury, including death" and "nonfatal injuries"  as would be the case if the exclusion for "`bodily injury, sickness, disease or death'" were technically interpreted), the court strictly construed the term "bodily injury" in the exclusion to mean nonfatal injury.
In the present case, the term "bodily injury" is treated quite differently. Here, the term is defined in the coverage section. That section states that the insurer will "pay ... all sums which the insured shall become legally obligated to pay as damages, ... because of: [¶] (a) bodily injury, including death resulting therefrom, hereinafter called `bodily injury' ..." (italics added). By quoting the term "`bodily injury,'" the lay reader is put on notice that this term has special significance, and that when such term is used elsewhere in the policy the definition provided in the coverage section applies. Further, "bodily injury" is never redefined or used inconsistently with regard to the initial definition. The eight exclusions that use the term "bodily injury" (exclusions a, b, c, d, e, f, k and m) do not substitute or add other phrases to explain or modify the meaning of the term. The instant policy does not leave room for an alternative interpretation of "bodily injury." Bodily injury, as defined in the coverage section, cannot be interpreted to mean anything less than "`bodily injury, including death....'"
*120 It should also be noted that the federal Court of Appeals for the Eighth Circuit rejected the same ambiguity argument in the context of a service station owner's liability policy, in Davis v. Liberty Mutual Insurance Company (1962) 308 F.2d 709. The policy in that case bound the insurer "`To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: [¶] A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person ...'" (p. 710, italics added).
Appellants next argue that since the term "hereinafter" has no precise meaning, the policy is ambiguous because there is no clear indication that the definition of "bodily injury" in the coverage section extends to any other part of the policy. Appellants claim that use of the term "hereinafter" fails to change the meaning of "bodily injury" in exclusion (k). As such, the term "bodily injury" in exclusion (k) should be interpreted as not including death.
(5) The fundamental rule of construction applicable to contracts of insurance requires the enforcement of a contract according to the policy language read and considered as a whole (Home Indem. Co. v. Leo L. Davis, Inc. (1978) 79 Cal. App.3d 863 [145 Cal. Rptr. 158]).
Although the term "hereinafter" has no precise meaning when it is not read in context with the rest of the policy, it is clear from the language and format of the present policy that the definition of "bodily injury" stated in the coverage section extends unambiguously throughout part I of the policy and is applicable to the exclusion in question.
The policy in issue is divided into five main parts, each part being devoted to a different type of insurance coverage (part I, that part of the policy in issue, covers liability for bodily injury and property damage). Each of these parts is made up of a system of smaller sections, including a coverage section, a definition section and an exclusion section.
From the layout of the policy, it is quite clear that each part is designed to stand by itself. The part is designed to be a complete statement by the insurer with regard to a particular type of insurance coverage. The sections contained within each part act as subheadings, designating different components of the part. As such, these sections must be read together to determine the type and extent of insurance coverage discussed in each part.
*121 "Bodily injury" is defined in the first section of part I (the coverage section), and it is provided that this definition is to apply "hereinafter." Since it is clear from the policy format that all of the sections of the part are to be read together, the only reasonable interpretation is that the "bodily injury" definition applies to all those sections in part I which follow the coverage section. As such, the definition of "bodily injury" provided in the coverage section clearly applies to exclusion (k) which is located in the exclusion section of part I.
Appellants insist that use of the term "hereinafter" could be interpreted as applying solely to the coverage clause. This position is untenable. Appellants' argument is based on the assumption that each section of the part stands by itself and does not influence the interpretation of other sections in the part. This assumption is clearly unreasonable since it is obvious from the policy that the purpose of certain sections is to aid the insured in the interpretation of the entire part. Appellants would have this court believe that the definitions section, for example, serves little purpose, since the definitions of the terms therein would not apply to any other section.
Since the policy construed as a whole clearly indicates that the term "hereinafter" extends throughout the whole of part I, the definition of "bodily injury" in the coverage section extends unambiguously to the exclusion in issue.
Finally, appellants argue that since there is nothing in exclusion (k) itself that expressly includes death, said exclusion is ambiguous. This argument is not well taken. The term bodily injury is unambiguously defined in the coverage section. This definition applies unambiguously to exclusion (k). Since "bodily injury" in the exclusion has been clearly defined to include death, the exclusion is not ambiguous.
Further, it should be pointed out (and appellants do not contend otherwise) that the precise language used in exclusion (k) was found unambiguous by the Supreme Court in California State Auto. Assn. Inter-Ins. Bureau v. Warwick (1976) 17 Cal.3d 190 [130 Cal. Rptr. 520, 550 P.2d 1056]. In Warwick, the court observed that subdivision (c) of section 11580.1 of the Insurance Code authorizes insurance carriers to exclude "`... Liability for bodily injury to an insured.'" "`[B]odily injury'" is *122 defined in the Insurance Code as including "sickness or disease, including death resulting therefrom." (§ 11580.06, italics added.)
The court in Warwick found that the exclusion, using the exact same language as the exclusion in the present case, clearly and unambiguously barred a claim by an insured for "bodily injury." In the present case, bodily injury is unambiguously defined to include death. As such, death is also unambiguously excluded. Moreover, it would follow that if such provision unambiguously excludes "bodily injury" as the court held in Warwick, it must also unambiguously exclude "death," since death, as defined in the Insurance Code, is within the meaning of bodily injury.
In the superior court proceedings, appellants argued that "what the insurance buyer sees is not really what the question is. Because as the Court knows, the insurance buyer probably doesn't read the policy."
(6) It is a general rule of appellate review that arguments waived at the trial level will not be considered on appeal. This rule is founded on considerations of practical necessity in the orderly administration of the law and of fairness to the court and the opposite party (5 Cal.Jur.3d, Appellate Review, § 480, pp. 117-118).
By stating at the trial level that "what the insurance buyer sees is not really what the question is" (italics added), appellants have admitted the conspicuousness of the exclusion is not in issue. Nor was the issue of conspicuousness discussed at any other time during the lower court argument.
Although some cases have held that a new argument may be made on appeal when a question of law only is presented (Ward v. Taggart (1959) 51 Cal.2d 736 [336 P.2d 534]), these cases do not involve a situation similar to the case at hand; i.e., where an appellant has expressly rejected the argument in the lower court.
(7) Nonetheless it is argued by appellants that the definition of "bodily injury" is inconspicuous. Appellants point out that the definition of "bodily injury, including death" is not located in the definitions section. Rather, that definition is found in the coverage section. Appellants reason that since bodily injury is a defined term, it belongs in the definitions section. Since the definition of bodily injury is not placed where a lay reader would reasonably expect to find it, the definition is inconspicuous according to appellants.
*123 Appellants base their argument on a statement made by the court in Mid-Century Ins. Co. v. Hauck, supra, 35 Cal. App.3d 293, 296: "If the carrier sought to exclude an action for wrongful death, it should have included in the SPECIAL CONDITIONS section a definition of `bodily injury' which would achieve that goal, and it should draft its exclusions so that a layman reading the policy understands the distinctions made therein."[2]
Appellants have based their argument on dicta. The sole issue in Mid-Century was whether an exclusion for bodily injury included death. That was an ambiguity issue. The court in Mid-Century found that the policy in question was ambiguous because it failed to define the term bodily injury, and used that term inconsistently so that bodily injury was incapable of uniform interpretation. The court never dealt directly with the issue of conspicuousness.
In the passage quoted above, the court is merely suggesting a reasonable place where a definition of "bodily injury" might be included. The above passage cannot be interpreted to mean that placing the definition of "bodily injury" in the coverage section rather than in the definitions section will render the definition inconspicuous.
In the present case, by contrast, the definition of "bodily injury" is placed conspicuously in the coverage section. Since the coverage section is the first paragraph of part I of the policy, the definition of "bodily injury" is one of the first matters discussed in that part. As such, it is one of the first things that a layman would read. Moreover, defining bodily injury in the coverage section is reasonable. As previously stated, the subject matter discussed in part I is liability for bodily injury and property damage. Since the coverage section of part I is properly devoted to setting out the general parameters of the insurance coverage with regard to bodily injury and property damage, it is reasonable to define those terms in that section.
The judgment is affirmed.
Miller, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied August 8, 1979.
NOTES
[1] Appellant admits that a proper exclusion of liability for wrongful death claims is authorized by subdivision (c) of section 11580.1, and subdivision (c) of section 11580.06 of the Insurance Code. Those sections state in relevant part:

Section 11580.1 "(c) In addition to any exclusion as provided in paragraph (3) of subdivision (b), the insurance afforded by any such policy of automobile liability insurance to which subdivision (a) applies may, by appropriate policy provision, be made inapplicable to any or all of the following: ... [¶] (5) Liability for bodily injury to an insured."
Section 11580.06 "Except as may be otherwise provided in this article: ... [¶] (c) The term `bodily injury' shall include sickness or disease, including death resulting therefrom." (Italics added.)
[2] The special conditions section in Mid-Century appears to serve the same purpose as the definitions section in the present case.