[No. A034268. First Dist., Div. Four. Oct. 14, 1987.]

MIRANDA MORI et al., Plaintiffs and Appellants, v.
SOUTHERN GENERAL INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Michael B. Moore and Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris for Plaintiffs and Appellants.

Nicholas Aracic, Susan T. Feldsted, Dean R. Headley, Moore, Clifford, Wolfe, Larson & Trutner and Jeffrey G. Gairey for Defendant and Respondent.

OPINION

**POCHÉ, Acting P. J.**—This is an appeal from a judgment entered in favor of defendant and respondent Southern General Insurance Company (Southern General or respondent), following the granting of its motion for summary judgment. We affirm.

## FACTS

Early in 1980 Fermin Salviejo (Salviejo) asked insurance broker James B. Ferrer III to obtain insurance coverage both for his automobile and the residential care facility he operated with his wife at their residence, known as the Salviejo Rest Home. Through Ferrer's efforts Salviejo obtained two

contracts of insurance a few months later: one with Southern General for the residential care facility and the other with Farmers Insurance Group (Farmers) for the automobile.

While driving a resident of the rest home to the bus station on August 30, 1980, Salviejo was involved in a collision with a garbage truck. Adolfo Mori, an employee of the garbage collection company, died from injuries he received in the accident.

Appellants, the widow and children of Mori, filed a wrongful death action against Salviejo and obtained a stipulated judgment against him. In exchange for payment of its policy limits, Farmers obtained a covenant from appellants that they would seek satisfaction of the judgment only from Salviejo's insurance policies.

In the present action appellants seek just that: satisfaction of the judgment under the Southern General policy. Southern General prevailed on its motion for summary judgment in which it contended that no coverage existed. This timely appeal followed the subsequent entry of judgment in favor of Southern General.

### DISCUSSION

Appellants sought coverage under two separate provisions of the Southern General policy: (1) "Coverage O-Hospital Professional Liability," and (2) comprehensive general liability. We review in that order.

1. *Hospital Professional Liability Coverage*

█ The insuring agreement of the hospital professional liability coverage provides: "The Company will pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of *injury* to which this insurance applies, caused by a medical incident[1] which occurs during the policy period . . . ." (Italics added.)

Four exclusions are set forth[2] of which only one is relevant to this occurrence: "This insurance does not apply . . . (d) to *injury* arising out of the

---

[1] The policy defines the term as follows: " '[M]edical incident' means any act or omission in the furnishing of professional health care services; in the furnishing of food, beverages, medications or appliances in connection with such services; and in the post mortem handling of human bodies. Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person shall be considered one medical incident."

[2] The policy sets forth the exclusions as follows: "This insurance does not apply: [¶] (a) to bodily injury to any employee of the insured arising out of and in the course of his employ-

ownership, maintenance, operation, use loading or unloading of any motor vehicle. . . ." (Italics added.)

Nowhere in the policy is there a definition of the term "injury." There is, however, a definition of "bodily injury": " '[B]odily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom[.]"

In addressing the generic term "injury" as it occurs in the coverage clause[3] appellants argue that death is an injury. We agree for several reasons. First, because the word is not defined in the policy it must be construed according to its plain meaning. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764].) Even if the meaning were not plain, it becomes so when viewed in the context of the policy's definition of a limited form of injury, "bodily injury," which as we have noted explicitly includes the ultimate injury of death. Since the limited term "bodily injury" includes death, the generic term "injury" must do so as well. Respondents concede as much.

It is appellants' next step that we do not take with them. In defining the same term—"injury"—as it reappears in the *exclusion* clause appellants see it as not including death. They explain this now-you-see-it-now-you-don't construction as necessarily flowing from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer. (See *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101 [109 Cal.Rptr. 811, 514 P.2d 123]).

To nail matters down they rely upon *Mid-Century Ins. Co.* v. *Hauck* (1973) 35 Cal.App.3d 293 [110 Cal.Rptr. 707], a case arising out of a water-skiing accident in which the insured's wife was killed when she collided with an irrigation pipe. Under the coverage clause the insurer agreed " 'to pay all sums which the insured shall become legally obligated to pay for *bodily injury, including death* at any time resulting therefrom, sustained by

---

ment by the insured; [¶] (b) to any obligation for which the insured or any carrier as his insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law; [¶] (c) to injury arising from a personal medical incident of any individual insured; [¶] (d) to injury arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, watercraft or aircraft."

[3]The coverage clause reads as follows: "The company will pay on behalf of the insured all sums which the insured shall come legally obligated to pay as damages because of injury to which this insurance applies, caused by a medical incident which occurs during the policy and, including service by any person as a member of a formal accreditation, standards review or similar professional board or committee of the named insured or as a person charged with executing the directives of such board or committee."

any person . . . .' " (*Id.,* at p. 295.) (Italics added.) The exclusions section provided that the policy did not cover: " '. . . *bodily injury*. . . sustained by (a) any member of the same household as the insured except a residence employee or (b) the named insured.' " (*Ibid.*) (Italics added.) The issue before the court was "whether the exclusion, since it speaks only of bodily injury, also includes death." (*Ibid.*) This court held it did not, finding the term "bodily injury" in the exclusion clause to refer only to nonfatal injuries. (*Id.,* at p. 296.)[4]

*Hauck* not only does not nail down appellants' argument, it is inapposite. There—unlike the case at hand—this court was construing not identical terms but terms which were merely similiar: *"bodily injury, including death"* is similar but not identical to *"bodily injury."* The ambiguity which was apparent in *Hauck* arose from that similarity in terms. Just as apparent in that case was the applicability of the rule that where ambiguity exists the

---

[4] Appellants also sense that there is support for their position in *Farmers Ins. Exchange* v. *Galvin* (1985) 170 Cal.App.3d 1018 [216 Cal.Rptr. 844]. We do not share in that evaluation because *Galvin* neither states nor holds that a single term in a contract of insurance as a matter of law must be given different meanings. Put frankly, the issue simply did not arise in the case.

In *Galvin,* the son of the name insured was injured by an uninsured driver while riding his father's moped. The policy described the insured's automobile but not the moped. In awarding the insured uninsured motorist benefits, the trial court found that the moped was not a " 'motor vehicle' " within the meaning of the insurance policy's exclusion clause—its coverage did not apply to injuries sustained while " 'occupying a motor vehicle owned by you or a family member for which insurance is not afforded under this policy . . . .' " (*Id.,* at p. 1020.) On appeal the sole issue presented was whether the determination that a moped was not a motor vehicle within the meaning of the exclusionary clause was correct: the Court of Appeal held it was.

The best that can be gleaned from *Galvin* to bolster appellants' argument is the following language: "Plaintiff [insurance company] contends that public policy considerations require that a moped be deemed a motor vehicle [for purposes of insurance coverage] because it would be unfair to characterize a moped as a motor vehicle for purposes of insurance coverage, while refusing to characterize a moped as a motor vehicle for purposes of insurance policy exclusion clauses. Plaintiff ignores the fact that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. Coverage clauses are interpreted broadly to afford the greatest possible protection to the insured. Exclusion clauses are interpreted narrowly against the insurer. [Citation.] The cases plaintiff cites in support of its argument that mopeds are considered motor vehicles are coverage cases, not exclusion cases." (*Id.,* at pp. 1022-1023.)

As we read that paragraph, it is not a holding that as a matter of law an identical term used in both coverage and exclusion clauses of that particular policy of insurance must be given different meanings. This becomes apparent if one notices that *Galvin* did not involve any question whatsoever concerning the scope of its coverage clause—indeed the opinion does not even recite that clause but merely refers to it generically as "uninsured motorist benefits." (See *id.,* at p. 1020.)

Instead, *Galvin* was merely noting that the term " 'motor vehicle' " had been given a different interpretation in the Insurance Code, the Vehicle Code, and in other cases addressing the term within their particular coverage clauses. (See *id.,* at pp. 1021-1022.) For these reasons, therefore, we find neither the rationale of *Galvin* nor its holding (as we understand them) to aid appellants' in this case.

rules of construction applicable to exclusionary clauses are entirely different than those applicable to coverage clauses: all ambiguities are construed against the insurer. (*Id.,* at 297, citing *State Farm Mut. Auto. Ins.* v. *Partridge, supra,* 10 Cal.3d 94, 101-102.)

In the case at hand there is no ambiguity whatsoever involving whether more was covered than was excluded since identical language was employed in setting the boundaries of each. The term of art used in both the insuring clause and the exclusion clause is the same: it is the simple, unmodified term "injury." Put another way, the policy is less than clear concerning what is meant by "injury" but it is laser clear that whatever that term denotes in the insuring clause it also means in the exclusion clause.

We therefore hold that the generic term "injury" used in the coverage clause includes coverage for death and that the use of identical language in the exclusion clause denoted the identical meaning. To put the matter in ordinary language the hospital professional liability portion of the policy provides coverage for death but not for death arising out of an automobile accident.

## 2. *Comprehensive General Liability Coverage*

Matters get appreciably more difficult for appellants in the comprehensive general liability portions of the policy. There liability coverage is afforded for hazards described as "Premises-Operations" as follows: "Adult Residential Care Facility rated as Convalescent or Nursing Homes—not mental psychopathic institutions, including complete operations. . . ." The insuring agreement states Southern General's agreement to pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of A. *bodily injury* or ¶ B. property damage ¶ to which this insurance applies, caused by an occurrence. . . ." (Italics added.)

Immediately below this language the exclusions to the coverage are listed including: "This coverage does not apply: . . . (b) To *bodily injury* or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of ¶ (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, . . ." (Italics added.)

Rather than transplanting their "injury-is-ambiguous" argument to this field of "bodily injury," appellants instead argue that the exclusionary clause is ineffective because it is not conspicuous, plain, and clear. With respect to the later two adjectives it is settled that this standard automobile exclusion is clear and unambiguous. (*California State Auto. Assn. Inter-Ins.*

*Bureau* v. *Antonelli* (1979) 94 Cal.App.3d 113, 118 [156 Cal.Rptr. 369].) Insofar as the remaining claim is concerned, a mere glance at the policy refutes the argument as a matter of law.

The judgment is affirmed. Respondent is to recover its costs on appeal.

Channell, J., and Sabraw, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 6, 1988.