Filed 1/26/16  Ward v. The Bank of New York Mellon CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DON WARD et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>THE BANK OF NEW YORK MELLON et al.,<br><br>        Defendants and Respondents. | B259894<br><br>(Los Angeles County<br>Super. Ct. No. BC498730) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Burlison Law Group and Robert C. Burlison, Jr., for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton and Kerry W. Franich, for Defendants and Respondents.

_____

Plaintiffs and appellants Don and Joanna Ward[1] appeal from a judgment in favor of defendants and respondents The Bank of New York Mellon (BONYM) and Wells Fargo Bank, N.A. in this action arising out of foreclosure proceedings.  On appeal, the Wards contend:  (1) the trial court erred by precluding evidence of a consent decree; (2) the Wards were not required to tender the amount of the debt in order to maintain equitable causes of action, because the deed of trust was void on its face, or in the alternative, payment was tendered; (3) there was evidence of an oral agreement to postpone the foreclosure sale; (4) the trial court erred by vacating a motion for new trial based on the Wards' failure to pay jury fees; and (5) attorney fees should not have been awarded, because the action was not on a contract.

We conclude no abuse of discretion has been shown as to the trial court's evidentiary ruling about the consent decree.  Substantial evidence supports the findings that the Wards' note was properly assigned to BONYM, the Wards were required to tender the amount of the debt in order to maintain their equitable causes of action, and they did not tender the full amount of the debt at any time.  There is also substantial evidence to support the finding that the parties did not enter into an oral agreement to postpone the foreclosure sale.  The trial court did not err by vacating the motion for new trial, and the Wards' cause of action for breach of written contract was based on the note and deed of trust.  Therefore, we affirm the judgment.[2]

---

[1] When appropriate we refer to the Wards by first name for clarity.

[2] The defendants' motion for judicial notice of the appellate opinion filed in the related unlawful detainer action is granted.

**FACTS AND PROCEDURAL HISTORY**[3]

**Loan, Modification Process, and Foreclosure**

Don is a self-employed general contractor and landscape designer.  In 2004, the Wards obtained a $400,000 loan from lender Greenpoint Mortgage Funding, Inc., secured by a deed of trust encumbering their property on Nolden Street in Los Angeles.  The loan was an adjustable rate note that required payments of only interest for the first 10 years.  No payment of principal was required until 2014.  The deed of trust listed Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and Marin Conveyancing as trustee.  Approximately 18 months later, the Wards opened a home equity line of credit through another bank.

BONYM's predecessor in interest in this case was the trustee of the Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-7.  BONYM's predecessor, as trustee, and Wells Fargo, as servicer, entered into a pooling and servicing agreement dated July 1, 2005, for the trust.  In 2006, Greenpoint assigned the Wards' mortgage to BONYM's predecessor.  The Wards' promissory note was transferred with thousands of other loans to the trust and serviced by Wells Fargo under the pooling agreement.  On May 24, 2006, the Wards received notice from America's Servicing Company (ASC), which is a subsidiary of Wells Fargo, that ASC had purchased the servicing of their loan (collectively referred to as Wells Fargo).

The Wards were unable to collect payment for substantial work that Don performed in 2008.  He did not file a tax return for 2008.  By January 2010, the Wards had failed to make mortgage payments totaling $1,778.85.  A Wells Fargo representative called to inquire about payment.  Don explained that the economy had virtually closed his

---

[3] In accordance with the standard of review on appeal, the facts are stated in the light most favorable to the judgment.  (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

business and he was actively looking for new work, because he was out of money. He could not make the payment until he had a source of funds. The representative asked if he wanted to see if he qualified for the Home Affordable Modification Program (HAMP). He responded, "Well, I mean, I couldn't commit to making any payments because there's no income coming in whatsoever." Wells Fargo sent a letter with instructions on applying for the modification program in case the Wards' circumstances changed.

In February 2010, a Wells Fargo representative called the Wards again to discuss the total past due amount of $2,625.92. Don explained that he had no money in his account, was overdrawn, and had zero income. The representative stated that he had to have income to qualify for a loan modification, but encouraged him to contact them if he found any type of work and apply for a modification.

In March 2010, a Wells Fargo representative called to inquire about the past due amount of $3,530.34. Don explained that he had not had any work in six months. He was actively seeking work, but was not in a position to guarantee any payments or apply for a loan modification. He did not have enough money to make even one mortgage payment on the loan. The Wards did not file a tax return for 2009.

In July 2010, a Wells Fargo representative called and stated that the Wards were in arrears for seven payments totaling $6,986.40. Don explained that he had started a new work project a few weeks earlier. The representative transferred the call to a special team for HAMP, but advised him that account collection activity would continue, including late charges and foreclosure activity. The Wards provided documents for the loan modification review, but not all of the documents that Wells Fargo required, and the review was closed. Wells Fargo required tax returns for 2008 and 2009, which the Wards had not yet filed.

The Wards made payments to reduce the outstanding amount of arrears to $3,097.54. A Wells Fargo representative called and encouraged Don to apply again for a modification. She noted that the Wards had not previously provided all of the information necessary to have the loan reviewed. Don explained that he provided expenses, but he had no income. She mentioned that when a borrower fell too far behind,

4

Wells Fargo would not accept payments on the account and advised him that collection activities would continue. The Wards initiated the modification review process again, but when additional documents were necessary and Wells Fargo could not reach them by telephone, the modification review was closed.

The loan was referred to Quality Loan Service Corporation for foreclosure proceedings in December 2010. The Wards sent a partial payment of $1,200, but Wells Fargo returned the check and required payment of the full amount of the arrears. Don told a representative of Wells Fargo that payment in full would have to wait, because he did not have the money.

The Wards spoke to a Wells Fargo representative about a loan modification review in January 2011. Don explained he had not been paid for a job that ended in September, which set the Wards back further. He had not had any work through the end of December 2010, but signed a contract for a new job at the end of December. He noted that he was not going to show any income for October, November and December, because he had no income. They sent in documents. Don spoke to a Wells Fargo representative who said he needed to send more information before Wells Fargo could assign an agent to review the loan.

A Wells Fargo representative called in February 2011 to give the Wards information about the foreclosure proceedings. She explained that once the property was in active foreclosure, Wells Fargo did not accept any payments on the property. She also explained that a sale date could be set for the foreclosure even while the Wards were going through the loan modification process. She advised him not to wait for a call from the loss mitigation department, but to actively call every week to negotiate a modification. She reminded Don that collection activity would continue.

A different Wells Fargo representative called later in February 2011. In the course of the conversation, she suggested looking into alternate sources of funds, such as liquidating assets, but Don said they had none. The representative stated that the account could still get a foreclosure sale date because of the delinquency. The sale date could be postponed to review their loan for a modification, but they could still get a sale date. If

he was able to reinstate the loan by paying the full amount due, the sale date could be cancelled. The representative noted that Don should call back after faxing his documents for review and keep calling back until he was under review.

The modification review was cancelled because the Wards did not provide requested information. In April 2011, another Wells Fargo representative called. Don initiated the process again and the Wards were prequalified again. The representative instructed him to send in certain documents and call to follow up on the process, so that Wells Fargo could advise him whether it was still under review or if any additional information was requested.

In May 2011, Don called Wells Fargo for an update. The representative that he spoke with said Wells Fargo needed his 2010 tax return or the extension. Don said he did not have a 2010 tax return. The representative said he needed to file for an extension or he would be disqualified from the modification program. In addition, Wells Fargo needed a 4506T form, which would authorize Wells Fargo to speak with the Internal Revenue Service directly about the Wards' tax information for 2009 and 2010. Under HAMP, Wells Fargo was required to review tax returns for the relevant years unless the borrower was exempt from filing tax returns. The Wards were not exempt and could not provide tax returns for 2009 or 2010. Wells Fargo could not view the tax returns directly, because no returns had been filed.

In May 2011, MERS recorded an assignment of the Wards' deed of trust to BONYM, as successor in interest to JP Morgan Chase Bank NA, as trustee for Structured Asset Mortgage Investments II Inc., Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-7. Wells Fargo continued to service the loan. Quality Loan Service was substituted as the new trustee under the deed of trust.

In early December 2011, Wells Fargo notified the Wards that their loan was no longer under review for a modification because the bank had been unable to reach the Wards. Also in December 2011, Don called Wells Fargo to ask whether he needed to provide one or two years of tax returns. Wells Fargo considered the Wards' loan

6

modification packages to be incomplete, because they did not provide copies of tax returns. The Wards lost two vacant properties to foreclosure in 2011.

Quality recorded a notice of default that stated the amount of arrears was $20,108 as of January 16, 2012. On February 23, 2012, Don called Quality and asked if the amount listed on the notice of default was the payoff amount. The Quality employee said they would have to send an updated reinstatement amount. Don requested the quote be sent by e-mail. On March 6, 2012, Quality sent an e-mail stating the reinstatement amount as of that day was $24,773.27. The amount would be $26,563.27, if paid by March 23, 2012. Don did not receive the e-mail with the reinstatement quotes.

Quality recorded a notice of trustee's sale in April 2012. Don called Quality on April 12, 2012. He explained that he never received the reinstatement quote and asked Quality to resend it. It seemed an e-mail from one account at Quality was not delivered, but using a different e-mail address from the company was successful. Quality sent another quote a few weeks later.

Don called Wells Fargo in April 2012. He explained that he had spoken with a representative at Quality and asked for the total amount due, because he would close out their insurance policy and pay it. When he did not get the payoff amount, he called and had them send it again. The estimated amount due in a few days was $26,000, but it would take the Wards a week to close out the insurance policy and send the money.

The Wards hired a firm to assist them with the loan modification process. They authorized Matt Casas to speak with Wells Fargo about modification. They sent updated documents for review. The sale date was postponed from May to June 18, 2012. However, the loan modification review was closed on June 8, 2012, because Wells Fargo could not reach the Wards to discuss their options. Casas learned the review had been closed and notified the Wards. The Wards received a letter notifying them that the modification review had been closed on June 18, 2012. The trustee's sale was held that day and Wells Fargo purchased the home for the minimum bid in the amount due for the loan. The second loan on the property from the line of credit had an outstanding balance

of approximately $175,000. The total fair market value of the property at the time of the foreclosure sale was approximately $415,000.

The Wards filed for bankruptcy a few months later. They listed all of their debts on their bankruptcy schedule, including approximately $300,000 in credit card debt owed to several companies, including Bank of America, Advanta, and Nordstrom. They also listed tax liens totaling approximately $90,000. After an unlawful detainer action, the Wards were evicted.

## Complaint and Trial Proceedings

On January 8, 2013, the Wards filed the instant complaint alleging several causes of action, including: wrongful foreclosure; violation of Civil Code sections 2924h, subdivision (e) and 2934g, subdivision (c)(1)(C); cancellation of trustee's deed upon sale; quiet title; breach of oral contract; negligence; unfair business practices; and intentional and negligent misrepresentation.

In March 2014, with the assistance of a loan modification specialist, the Wards provided a complete package of documents required for a loan modification review, including tax returns. Wells Fargo declined to modify the loan, based on a lack of affordability. The Wards appealed the decision, but Wells Fargo denied their appeal.

A jury trial began on July 28, 2014. Wells Fargo loan verification analyst Robert Ferguson, as the person most knowledgeable of the facts of the loan, testified that the Wards' situation qualified them for consideration under the HAMP guidelines but they never provided the full package of documents required to have their loan reviewed under HAMP prior to the foreclosure sale. He testified that Wells Fargo complied with the suspension of a referral to foreclosure conditions outlined in the HAMP manual. He explained the modification process at Wells Fargo, discussed the HAMP guidelines, and stated that a borrower with no income would not qualify for any kind of loss mitigation or plan. Any modification plan requires payments, so the borrower must have income.

8

Ferguson also testified that when a complete package is received, an underwriter reviews the numbers. Under the most restrictive guidelines, the underwriter assumes a two percent interest rate and a 40-year loan, but the ratio of the borrower's income to the cost of housing cannot exceed 31 percent. An alternate guideline uses market interest rates and allows for a ratio of 25 percent. The Wards did not qualify for a loan modification, because their ratio was more than 126 percent.

Don Ward testified that he was never promised a loan modification would go through and never assured that a modification would be completed in his favor. He believed that he provided all of the documents requested by Wells Fargo. However, he understood that Wells Fargo needed to see two years of tax returns, including returns for years that he did not file prior to the foreclosure sale. He understood that he needed to pay the past due balance to reinstate the loan to prevent foreclosure but he did not do that. The insurance policy that he could have cashed out was worth approximately $21,000, but he never used it because he believed the outstanding arrears could be added to the total amount of a modified loan.

On August 7, 2014, defendants filed a motion for nonsuit. They argued the Wards could not maintain equitable causes of action because they failed to tender the amount of the debt and failed to establish standing for an unfair competition claim. They argued the Wards failed to prove claims for fraud, breach of contract, negligence, or statutory violation. The Wards responded that there was evidence the loan was not properly assigned to the trust, and as a result, the foreclosure was void and tender was not required. Defendants argued the recording of the assignment of the deed of trust was related to the notice of default and not the same as the date that the note was assigned to the pooling agreement. In fact, defendants argued, there was no evidence of any issues with the assignment of the note. The trial court granted the motion to dismiss the cause of action for fraud based on the lack of evidence of any intentional misrepresentations. The trial court denied the motion as to the remaining issues.

Defense expert Tom Lambert, a certified public accountant, testified that the documents the Wards submitted to Wells Fargo did not accurately reflect their economic

9

situation. Their initial submission to Wells Fargo listed minimum monthly credit card payments of $800, but subsequent submissions listed monthly credit card payments of $182. The Wards had listed the amount they were paying on their credit card debt, not the minimum monthly amount required under the credit card agreements, which Lambert estimated was between $3,000 and $4,000. The Wards listed their net income, but did not list expenses like payroll taxes and insurance. In Lambert's opinion, if the Wards had received a loan modification based on the information that they submitted to Wells Fargo, they would not have had the ability to make the payments and would have fallen back into foreclosure immediately.

The Wards brought a motion for a directed verdict, arguing there was no evidence of an assignment of the note from Greenpoint to the pooling agreement. The trial court denied the motion. Wells Fargo filed a motion for a directed verdict as well, arguing that the equitable claims were adjudicated in the unlawful detainer action, the Wards failed to tender the amount of the debt, and there was no evidence to support the causes of action for breach of contract, negligence, or a statutory violation. The trial court denied Wells Fargo's motion for a directed verdict.

In discussing the special verdict form, Wells Fargo argued no section was necessary for breach of a written contract, because the complaint alleged breach of an oral agreement. The Wards responded that their cause of action for breach of written contract was contained in the first cause of action titled wrongful foreclosure. The written agreement was the note from Greenpoint, which defendants claimed had been assigned to BONYM, and which the Wards asserted BONYM had no standing to foreclose. The Wards argued that other causes of action, such as the quiet title claim, were also based on breach of a written agreement, namely, the promissory note. The trial court agreed with the Wards and allowed a cause of action for breach of written contract to be presented to the jury.

Prior to closing arguments, the trial court ruled on the equitable causes of action. Having heard the facts at trial, the court found the Wards had not met their burden of proof with respect to the equitable claims. The court ruled in favor of defendants as to

10

the equitable causes of action prior to submitting the remaining causes of action to the jury.

In closing argument, the Wards' attorney argued strenuously that the jury could find a breach of the parties' agreement or negligence based on finding the note was not transferred to the pooling agreement by July 28, 2005, and therefore, defendants lacked the ability to foreclose on the note. He also argued that the HAMP guidelines were part of the contract that defendants were required to follow.

Defendants' attorney argued to the jury that the Wards could not identify any oral promise by defendants to support the cause of action for breach of an oral contract. The attorney stated promises about property had to be in writing and could not be oral, so the oral contract could not be based on the note or the deed of trust. The attorney also noted Don's concession that no one promised to modify his loan. On the cause of action for breach of written contract, the attorney argued the deed of trust permitted the mortgage to be transferred to the loan pool, and the evidence was that it was transferred into the pool prior to the closing date of the agreement.

In reply, the Wards' attorney argued that the note was signed by the Wards and Greenpoint, then the deed of trust was assigned by Greenpoint to BONYM, for whom Wells Fargo is the servicer, so the note was clearly a contract between them. He agreed that one could not have an oral contract in a real estate transaction, but in this case, the oral contract was in the form of representations about keeping the Wards in their house. He stated that the Wards accepted the oral contract by applying for a loan modification.

On August 13, 2014, the jury returned its verdict. The jury found the parties did not enter into an oral contract. The parties entered into a written contract, and the Wards did all, or substantially all, of the significant things that the contract required them to do, but Wells Fargo did not fail to do anything that the contract required them to do. In addition, Wells Fargo was negligent, but Wells Fargo's negligence was not a substantial factor in causing harm to the Wards. The trial court noted that the equitable causes of action had previously been dismissed.

11

The trial court entered judgment on September 3, 2014, dismissing with prejudice the equitable claims for wrongful foreclosure, violation of Civil Code sections 2924h, subdivision (e), and 2934g, subdivision (c)(1)(C), cancellation of trustee's deed upon sale, quiet title and unfair business practices, and entering judgment in favor of defendants.

## DISCUSSION

## Exclusion of Evidence

The Wards contend the trial court erred by granting a motion in limine to exclude evidence of a consent decree entered in a case brought by the United States of America and 49 state Attorneys General against several banks, including Wells Fargo. The Wards assert that they were not attempting to enforce the consent decree, but wanted to use the decree to show defendants' deceptive practices. Defendants contend the record is inadequate for review of the trial court's evidentiary ruling, and no abuse of discretion has been shown in any event. We agree with defendants' analysis.

It is a fundamental rule of appellate review that the judgment is presumed correct, and the appellant has the burden of demonstrating reversible error by an adequate record. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.) The appellate record in this case does not contain a reporter's transcript of the hearing on the motion in limine, or an agreed or settled statement in lieu of a reporter's transcript. (*Leslie v. Roe* (1974) 41 Cal.App.3d 104; Cal. Rules of Court, rules 8.134, 8.137.) We review a trial court's evidentiary rulings for an abuse of discretion. (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217; *Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1426.) Because there is no record explaining why the trial court excluded the evidence of the consent decree, we have no basis to find an abuse of discretion. (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [absence of

12

record precludes determination that trial court abused its discretion]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 [same].)

Even were we to consider the record adequate for review, no abuse of discretion has been shown. The consent decree expressly states, "Defendant, by entering into this Consent Judgment, does not admit the allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this Court." The decree requires payments to an escrow account, relief to consumers who meet certain eligibility criteria, and payments to borrowers whose homes were sold or taken in foreclosure between January 1, 2008, and December 31, 2011. The decree was entered on April 4, 2012. The Wards have not identified any provision of the decree that is relevant to the instant proceedings. The trial court had discretion to exclude the consent decree under Evidence Code section 352, subdivision (b), because any probative value the consent decree had was substantially outweighed by the probability that its admission would create substantial danger of undue prejudice and confuse the issues or mislead the jury.

Also, the Wards have not demonstrated that they would have achieved a more favorable result had the consent decree been admitted into evidence. The Wards solicited extensive testimony about HAMP provisions and argued that Wells Fargo failed to assist them to modify their loan. The jury found that defendants acted negligently, but their actions were not a substantial factor in causing the harm suffered by the Wards. The Wards have not shown how admission of the consent decree would have led to a more favorable result.

## Substantial Evidence

### A. Standard of Review

"'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence,

13

contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion*.' [Citation.] The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials. [Citation.]" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

### B. Tender Required to Maintain Equitable Causes of Action

The Wards contend they were not required to tender the amount of the debt in order to recover on their equitable claims, because the foreclosure sale was void, or alternatively, they contend that they met the tender requirement. We conclude the trial court's findings are supported by substantial evidence.

As a general rule, a plaintiff may not challenge the propriety of a foreclosure on his or her property without offering to repay what he or she borrowed against the property. (*Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117.) Before asking a court to exercise its equitable powers to stop or set aside foreclosure proceedings, the defaulting borrower must first "do equity." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021 [tender rule is based on equitable maxim that a court of equity will not order a useless act performed if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs].) The tender rule is strictly enforced. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.) With certain exceptions, the tender rule applies to any cause of action that is based on allegations of wrongful foreclosure, seeks redress from foreclosure, or is implicitly integrated with a foreclosure, whether it seeks equitable relief or monetary relief. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.)

14

The Wards contend they were not required to tender the amount of the debt based on an exception for deeds that are void on their face. (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878 [beneficiary substituted trustees; trustee's sale void where original trustee completed trustee's sale after being replaced by new trustee because original trustee no longer had power to convey property]; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113.)

In this case, the trier of fact found the Wards' note and deed of trust were properly assigned to defendants. This finding is supported by substantial evidence. Wells Fargo loan verification analyst Robert Ferguson, as the person most knowledgeable of the facts of the loan, testified that the mortgage for which Greenpoint was the original lender was assigned to BONYM, for which Wells Fargo was the servicer. Specifically, he testified that the Wards' promissory note was transferred to the pooling and servicing agreement in 2006 and the assignment of the deed of trust was recorded in May 2011. Defendants notified the Wards in 2006 that Wells Fargo had purchased the servicing of the loan. The Wards communicated with Wells Fargo concerning their loan payments. There was no evidence at trial that any other entity was attempting to collect payment on the loan from the Wards from 2006 to the date of foreclosure. Substantial evidence supported the finding that the note was assigned to the pooling agreement in 2006. The deed of trust following the foreclosure sale was not void on its face.

Alternatively, the Wards contend that they tendered payment to Wells Fargo. However, substantial evidence supports the trial court's determination that no tender was made. Don repeatedly told Wells Fargo representatives that he did not have any income to make the mortgage payments. After the notice of default was received, he called to ask for a reinstatement quote. The quote provided approximately one week later was more than the amount that the Wards could have obtained from the value of their insurance policy. Don hoped that the Wards would qualify for a modified loan which would incorporate the amount of the arrears, but Wells Fargo clearly stated collection efforts would continue during the modification review process. There is no evidence that the Wards ever offered to pay the full amount of the arrears to reinstate the loan, and no

15

evidence defendants refused to accept a proper tender of the full amount to reinstate the loan. Because the Wards never tendered payment of the debt, the trial court properly found they were precluded from relief on the equitable causes of action.

### C. Oral Contract

The Wards seem to contend there was evidence and law to support finding an oral agreement to postpone the foreclosure sale. However, the jury found there was no oral contract between the parties, and the jury's finding is supported by substantial evidence. Don testified defendants never promised that the Wards would qualify for a loan modification and Wells Fargo clearly stated that collection efforts would proceed during the modification review process. There was no evidence that Wells Fargo promised to postpone the foreclosure sale. As explained above, no tender was made. The evidence supported the jury's finding that no oral agreement was entered into.

## Dismissal of Motion for New Trial

The Wards contend the trial court erred by voiding their motion for new trial for failure to timely pay jury fees. However, the minute order from October 28, 2014, reflects that the Wards failed to pay the fee required for the motion for new trial, failed to provide supporting documents for the motion, and the parties stipulated that the motion would not be heard. The arguments concerning the new trial motion have been waived. (*California State Auto. Assn. Inter-Ins. Bureau v. Antonelli* (1979) 94 Cal.App.3d 113, 122.)

## Attorney Fees

The Wards contend the trial court erred in two ways by awarding attorney fees. First, they contend the defendants could not recover attorney fees because the action was

not on a contract.  This is incorrect.  During trial, Ferguson testified that Wells Fargo and the Wards are bound by the terms and conditions in the original deed of trust.  The Wards argued strenuously that the verdict form needed to include a cause of action for breach of written contract based on the original note between the Wards and Greenpoint.  They argued that the first cause of action for wrongful foreclosure encompassed a breach of contract action, and other causes of action, including the quiet title claim, were based on breach of the promissory note.  The Wards argued the jury should find the note was not properly assigned to the pooling agreement.  The trial court correctly concluded the Wards had brought contract causes of action based on the note and deed of trust in awarding attorney fees.

The Wards' second contention is that the trial court should have apportioned fees between contract and noncontract claims.  However, the Wards have failed to provide an adequate record for review, because the record on appeal lacks a reporter's transcript of the hearing on the motion for attorney fees.  The trial court has discretion to award attorney fees and costs.  We will not disturb the trial court's decision absent an abuse of that discretion.  (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1603-1604.)  "It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error."  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)  Because appellants have failed to furnish an adequate record of the attorney fee proceedings, the apportionment issue must be decided against them.  In addition, no abuse of discretion has been shown because the issues and evidence for the Wards' contract causes of action were so interrelated with the noncontract claims that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.  (*Amtower v. Photon Dynamics, Inc.*, *supra*, 43 Cal.App.4th at pp.1603-1604.)

17

## DISPOSITION

The judgment is affirmed. Respondents The Bank of New York Mellon and Wells Fargo Bank, N.A. are awarded their costs on appeal.


KRIEGLER, J.


We concur:



MOSK, Acting P. J.



BAKER, J.